[No. A132927. First Dist., Div. One. July 18, 2012.]

LORENA NELSEN, Plaintiff and Appellant, v.
LEGACY PARTNERS RESIDENTIAL, INC., Defendant and Respondent.

1118

**COUNSEL**

R. Rex Parris Law Firm, R. Rex Parris, Alexander R. Wheeler, Jason P. Fowler, Kitty Szeto, Douglas Han; Lawyers for Justice and Edwin Aiwazian for Plaintiff and Appellant.

Rutan & Tucker, Mark J. Payne and Brandon L. Sylvia for Defendant and Respondent.

**OPINION**

**MARGULIES, J.**—Lorena Nelsen filed a putative class action lawsuit against her former employer, Legacy Partners Residential, Inc. (LPI), alleging multiple violations of the Labor Code. Based on an arbitration agreement she signed when LPI hired her, LPI moved to compel Nelsen to submit her individual claims to arbitration. Nelsen purports to appeal from the ensuing order granting LPI's motion. Although Nelsen fails to meet her burden to show the court's order is appealable, we exercise our discretion to treat the appeal as a petition for writ of mandate. We find (1) the arbitration agreement is not unconscionable and (2) notwithstanding that the agreement precludes class arbitration by its own terms, Nelsen fails to show that compelling her to individual arbitration violates state or federal law or public policy. Accordingly, we deny Nelsen's petition and affirm the correctness of the trial court's order.

# I. BACKGROUND

Nelsen was employed by LPI as a property manager in California from approximately July 2006 until June 2009. At the inception of her employment, Nelsen was provided with multiple employment forms to read and sign, including a 43-page "Team Member Handbook." The last two pages of the handbook contained a section entitled, "TEAM MEMBER ACKNOWL-EDGEMENT AND AGREEMENT" (Agreement), followed by signature lines for the "TEAM MEMBER" and a "LEGACY PARTNERS REPRESENTA-TIVE." The signature line was preceded by a sentence in bold print, stating, "My signature below attests to the fact that I have read, understand, and agree to be legally bound to all of the above terms." Nelsen and a representative of LPI both signed the Agreement in July 2006.

The first four paragraphs of the printed form Agreement recited Nelsen's acknowledgments she (1) had received the handbook, (2) understood and agreed to all terms and conditions of employment outlined in the handbook, (3) agreed LPI could modify any of the policies or benefits set forth in the handbook at any time and for any reason, and (4) understood and agreed she was an "at will" employee. The fifth paragraph contained the following relevant arbitration language: "I agree that any claim, dispute, or controversy . . . which would otherwise require or resort [*sic*] to any court . . . between myself and Legacy Partners (or its owners, partners, directors, officers, managers, team members, agents, related companies, and parties affiliated with its team member benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, the Legacy Partners, . . . shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act [(9 U.S.C. § 1 et seq.;)], in conformity with the procedures of the California Arbitration Act . . . ."[1,2]

On July 26, 2010, Nelsen filed the present suit against LPI alleging causes of action arising under provisions of the Labor Code for failure to (1) pay

---

[1] The arbitration clause further provided for (1) the arbitrator to be a retired superior court judge, subject to disqualification "on the same grounds as would apply to a judge of such court"; (2) all rules of pleading and evidence to be applicable, "including the right of demurrer . . . [,] summary judgment, judgment on the pleadings, and judgment under California Code of Civil Procedure Section 631"; (3) the arbitration award to include a "written reasoned opinion"; and (4) a right of appeal "at either party's written request" to a second arbitrator who would review the award "according to the law and procedures applicable to appellate review by the California Court of Appeal . . . of a civil judgment following court trials."

[2] There is no dispute the Federal Arbitration Act (FAA) governs the arbitration agreement. (See *Perry v. Thomas* (1987) 482 U.S. 483, 489 [96 L.Ed.2d 426, 107 S.Ct. 2520] [FAA applies to all arbitration agreements in contracts evidencing interstate commerce, and preempts Cal. statute exempting Lab. Code wage claims from arbitration].)

overtime, (2) provide meal periods, (3) provide rest breaks, (4) timely pay wages, (5) pay wages upon termination, (6) provide accurate itemized wage statements, (7) maintain payroll records, or (8) reimburse for necessary business expenses. The complaint also included a cause of action for violation of the unfair competition law (UCL), Business and Professions Code section 17200 et seq., based on the aforementioned statutory wage claims, and seeking injunctive and other relief under that statute. The complaint was styled as a class action by Nelsen on behalf of all current and former California-based property managers who worked for LPI at any time from four years preceding the filing of the complaint until final judgment in the suit. In addition to consequential damages, restitution, and injunctive relief on behalf of the class, the complaint sought statutory penalties and attorney fees.

LPI sent Nelsen a letter advising her of the arbitration agreement and requesting she stipulate to the dismissal of her action and submit her individual claims to arbitration. After receiving no response from Nelsen, LPI moved two weeks later to compel Nelsen to arbitrate her claims. Nelsen opposed the motion on the grounds the arbitration agreement was unconscionable and violated California public policy favoring class actions and wage and hour lawsuits.

The trial court granted LPI's motion and entered an order requiring Nelsen to submit her individual claims to arbitration and staying the action in its entirety. Nelsen timely appealed from the order, citing *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277 [90 Cal.Rptr.3d 539] (*Franco*) in her notice of appeal as the basis for her right to appeal.

## II. DISCUSSION

Nelsen contends (1) the order compelling arbitration is appealable, (2) the arbitration clause is unconscionable and unenforceable, (3) enforcement of the arbitration clause to preclude class arbitration would violate California and federal law and public policy in the employment field, and (4) her injunctive relief claim under the UCL is not subject to arbitration.

### A. *Appealability*

■ Orders granting motions to compel arbitration are generally not immediately appealable. (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 648–649 [9 Cal.Rptr.3d 422]; *Gordon v. G.R.O.U.P., Inc.* (1996) 49 Cal.App.4th 998, 1004, fn. 8 [56 Cal.Rptr.2d 914].) Such orders

are normally subject to review only on appeal from the final judgment. (Code Civ. Proc., §§ 906, 1294.2; see *Muao v. Grosvenor Properties, Ltd.* (2002) 99 Cal.App.4th 1085, 1088–1089 [122 Cal.Rptr.2d 131].) Nelsen claims this case comes within an exception to the general rule recognized in *Franco* based on the so-called "death knell" doctrine. *Franco* permitted an immediate appeal from an order made in a putative class action requiring arbitration of individual claims and waiving class arbitration because such an order is effectively the "death knell" of the class litigation. (See *Franco, supra*, 171 Cal.App.4th at p. 1288.)

■ As an initial matter, LPI points out Nelsen failed to cite *Franco* or any other authority supporting the appealability of the trial court's order anywhere in her opening brief, in violation of California Rules of Court, rule 8.204(a)(2)(B). On that basis, LPI asks this court to (1) strike Nelsen's opening brief, and (2) find Nelsen waived any argument for appealability based on *Franco*. (See *Lester v. Lennane* (2000) 84 Cal.App.4th 536, 557 [101 Cal.Rptr.2d 86] [holding Court of Appeal has discretion to strike opening brief that fails to include an adequate statement of appealability]; *Baugh v. Garl* (2006) 137 Cal.App.4th 737, 746 [40 Cal.Rptr.3d 539] [contentions not raised in appellant's opening brief deemed waived].) We decline to grant either remedy in this case. Nelsen's citation to *Franco* in her notice of appeal put LPI on notice of her position regarding appealability and LPI took advantage of the opportunity in its respondent's brief to address that case and cite authority arguably contrary to it. LPI cannot reasonably claim prejudice from our consideration of Nelsen's argument based on *Franco*.

*Franco* involved a lawsuit filed by an employee against his employer seeking relief on behalf of himself and other employees for alleged state statutory wage and hour violations. (*Franco, supra*, 171 Cal.App.4th at p. 1282.) Franco's employer filed a petition to compel arbitration based on an arbitration agreement containing provisions waiving class arbitrations, and precluding Franco from bringing claims in arbitration on behalf of other employees. (*Id.* at pp. 1283–1284.) The trial court granted the petition, directed Franco to submit his individual claims to arbitration, denied class arbitration, and ordered the civil action to be dismissed for all purposes except enforcement of the arbitration order or to confirm, modify or vacate any arbitration award. (*Id.* at pp. 1285, 1287.) The employer contended Franco's ensuing appeal from the order was improper. Without further elaboration, the Court of Appeal found the order was appealable: "The [trial court's] order found that the class arbitration waiver was enforceable and instructed Franco to arbitrate his claims individually. That was the 'death knell' of class litigation through arbitration." (*Id.* at p. 1288.)

■ The "death knell" doctrine was explained as follows in *General Motors Corp. v. Superior Court* (1988) 199 Cal.App.3d 247 at page 251 [244 Cal.Rptr. 776]: "Our Supreme Court . . . has held that where an order has the 'death knell' effect of making further proceedings in the action impractical, the order is appealable. In *Daar* v. *Yellow Cab Co.* [(1967)] 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732], the court held that an order sustaining a demurrer to class action allegations and transferring the action from superior court to municipal court was an appealable order. The court stated: '[H]ere the order under examination not only sustains the demurrer, but also directs the transfer of the cause from the superior court, where it was commenced as a class action, to the municipal court. We must assay the total substance of the order. It determines the legal insufficiency of the complaint as a class suit and preserves for the plaintiff alone his cause of action for damages. In "its legal effect" the order is tantamount to a dismissal of the action as to all members of the class other than plaintiff. It has virtually demolished the action as a class action. If the propriety of such disposition could not now be reviewed, it can never be reviewed.' "

Thus, "[t]he death knell doctrine [applies] *when it is unlikely the case will proceed as an individual action.*" (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1098 [118 Cal.Rptr.2d 862] (*Szetela*), italics added [finding an order sharply limiting the scope of class arbitration was not a "death knell" order].) Here, Nelsen fails to explain or demonstrate how the trial court's order makes it impossible or impracticable for her to proceed with the action at all.[3] However, despite Nelsen's default, we need not decide whether her appeal comes within the death knell doctrine. As the Court of Appeal did in *Szetela*, we exercise our discretion to treat Nelsen's appeal as a petition for a writ of mandate. (*Szetela*, at p. 1098; *Olson v. Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720].) This will ensure appellate review of the court's arbitration order in the event there is no future appellate proceeding in which the order will be reviewable.

## B. *Unconscionability*

■ Section 2 of the FAA provides in relevant part as follows: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" (9 U.S.C. § 2, italics added.) Section 2 is a "congressional declaration of a

---

[3] As noted, Nelsen made no mention whatsoever of *Franco* or the death knell doctrine in her opening brief. In her reply brief she argues the court's order effectively ended the class litigation, but she makes no contention and cites to no evidence in the record showing it is impracticable for her to proceed with individual arbitration.

liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." (*Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24 [74 L.Ed.2d 765, 103 S.Ct. 927].) The italicized portion of section 2—known as its "savings clause"—provides an exception to the enforceability of arbitration agreements for " 'generally applicable contract defenses, such as fraud, duress, or unconscionability.' " (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. \_\_\_, \_\_\_ [179 L.Ed.2d 742, 131 S.Ct. 1740, 1746] (*Concepcion*).)

■ Invalidating an arbitration agreement for unconscionability under California law requires a two-part showing: "[T]he party opposing arbitration . . . ha[s] the burden of proving that the arbitration provision [is] unconscionable. [Citation.] . . . [¶] Unconscionability requires a showing of both procedural unconscionability and substantive unconscionability. [Citations.] Both components must be present, but not in the same degree; by the use of a sliding scale, a greater showing of procedural or substantive unconscionability will require less of a showing of the other to invalidate the claim." (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 795 [137 Cal.Rptr.3d 773].) Where the relevant extrinsic evidence is undisputed, as it appears to be here, the appellate court reviews the arbitration contract de novo to determine whether it is legally enforceable. (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174 [116 Cal.Rptr.2d 671].)

Several factors support a finding LPI's arbitration agreement is procedurally unconscionable. It was part of a preprinted form agreement drafted by LPI that all of LPI's California property managers were required to sign on a take-it-or-leave-it basis. The arbitration clause was located on the last two pages of a 43-page handbook. While the top of page 42 contains a highlighted prominent title "TEAM MEMBER ACKNOWLEDGMENT AND AGREEMENT," the title makes no reference to arbitration and the arbitration language itself appears in a small font not set off in any way to stand out from the rest of the agreement or handbook. Moreover, unless Nelsen happened to be conversant with the rules of pleading in the Code of Civil Procedure, the law and procedure applicable to appellate review, and the rules for the disqualification of superior court judges, the terms and rules of the arbitration referenced in the clause would have been beyond her comprehension. (Cf. *Trivedi v. Curexo Technology Corp.* (2010) 189 Cal.App.4th 387, 393 [116 Cal.Rptr.3d 804] [employment arbitration provision was procedurally unconscionable because it was prepared by the employer, mandatory, and no copy of the applicable arbitration rules was provided].)

■ Substantive unconscionability depends on the terms of the arbitration clause itself. In this case, the issue of whether the clause in question is

substantively unconscionable has already been addressed by the California Supreme Court in *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064 [130 Cal.Rptr.2d 892, 63 P.3d 979] (*Little*). (See *Marshall v. Pontiac* (S.D.Cal. 2003) 287 F.Supp.2d 1229 [identical language, outcome controlled by *Little*].) The employment arbitration agreement in issue in *Little* was, for all practical purposes, identical to Nelsen's.[4] There is just one substantive difference between the two arbitration agreements: the agreement in issue in *Little* provided that only awards exceeding $50,000 required the arbitrator's " 'written reasoned opinion' " or triggered the right to appeal to a second arbitrator. (29 Cal.4th at p. 1070.) The Supreme Court found this one provision substantively unconscionable because, as a practical matter, the $50,000 appeal minimum operated in a lopsided way—it was much more likely to give the employer a right to appeal an unfavorable award than the employee. (*Id.* at pp. 1071–1074.) However, the Supreme Court did not toss out the arbitration provision as a whole on that basis. It ordered the $50,000 appeal threshold severed from the rest of the arbitration agreement, and found the rest of the arbitration agreement valid and enforceable. (*Id.* at pp. 1074–1076, 1085.) The provision severed by the court in *Little* does not appear in the arbitration agreement before this court.

Relying on *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 at page 113 [99 Cal.Rptr.2d 745, 6 P.3d 669]

---

[4] The agreement read in relevant part as follows: " 'I agree that any claim, dispute, or controversy . . . which would otherwise require or allow resort to any court . . . between myself and the Company . . . arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with, the Company . . . shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the California Arbitration Act (. . . including [Code of Civil Procedure] section 1283.05 and all of the act's other mandatory and permissive rights to discovery); provided, however, that: In addition to requirements imposed by law, any arbitrator herein shall be a retired California Superior Court Judge and shall be subject to disqualification on the same grounds as would apply to a judge of such court. To the extent applicable in civil actions in California courts, the following shall apply and be observed: all rules of pleading (including the right of demurrer), all rules of evidence, all rights to resolution of the dispute by means of motions for summary judgment, judgment on the pleadings, and judgment under Code of Civil Procedure section 631.8. Resolution of the dispute shall be based solely upon the law governing the claims and defenses pleaded, and the arbitrator may not invoke any basis other than such controlling law, including but not limited to, notions of "just cause." As reasonably required to allow full use and benefit of this agreement's modifications to the act's procedures, the arbitration shall extend the times set by the act for the giving of notices and setting of hearings. Awards exceeding $50,000.00 shall include the arbitrator's written reasoned opinion and, at either party's written request within 20 days after issuance of the award, shall be subject to reversal and remand, modification, or reduction following review of the record and arguments of the parties by a second arbitrator who shall, as far as practicable, proceed according to the law and procedures applicable to appellate review by the California Court of Appeal of a civil judgment following court trial. I understand by agreeing to this binding arbitration provision, both I and the Company give up our rights to trial by jury.' " (*Little, supra,* 29 Cal.4th at pp. 1069–1070.)

(*Armendariz*), Nelsen claims the arbitration agreement is substantively unconscionable because it lacks bilaterality. Citing language identical to that found in Nelsen's arbitration agreement, the *Little* court rejected the same bilaterality argument Nelsen makes here: "[U]nlike the agreement in *Armendariz*, which explicitly limited the scope of the arbitration agreement to wrongful termination claims and therefore implicitly excluded the employer's claims against the employee [citation], the arbitration agreement in the present case contained no such limitation, instead applying to 'any claim, dispute, or controversy . . . between [the employee] and the Company.'" (*Little, supra*, 29 Cal.4th at p. 1075, fn. 1.) *Little* is controlling on that issue. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)[5]

We therefore reject Nelsen's argument that her arbitration agreement with LPI is substantively unconscionable. Because she had the burden of demonstrating both procedural and substantive unconscionability (*Ajamian v. CantorCO2e, L.P., supra*, 203 Cal.App.4th at p. 795), we find the arbitration agreement was not unenforceable due to unconscionability.

## C. *Violation of California Public Policy*

### 1. *Overview of* Gentry

In her opposition to LPI's motion to compel arbitration in the trial court, Nelsen sought classwide arbitration of her claims in the alternative, if the arbitration clause as a whole was not found to be unconscionable. Relying on *Gentry v. Superior Court* (2007) 42 Cal.4th 443 [64 Cal.Rptr.3d 773, 165 P.3d 556] (*Gentry*), Nelsen contends requiring individual arbitration of her wage and hour claims would violate California public policy even if the arbitration agreement is otherwise found to be valid and enforceable. As explained in *Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825 [109 Cal.Rptr.3d 289] (*Arguelles-Romero*), "*Gentry* is concerned with the effect of a class action waiver on unwaivable statutory rights *regardless of unconscionability*." (*Id.* at p. 836.)

"*Gentry* involved a class of employees who alleged that their employer had improperly characterized them as exempt and therefore did not pay them

---

[5] Nelsen's arbitration agreement, like that in *Little*, is silent with respect to costs unique to the arbitration forum, such as arbitrator fees. (See *Little, supra*, 29 Cal.4th at pp. 1076–1085.) Because the employee's claim in *Little* involved nonwaivable statutory rights, the Supreme Court construed the arbitration agreement to require the employer to pay all types of costs unique to arbitration without regard to which party prevailed in the arbitration. (*Id.* at pp. 1076–1077, 1085, following *Armendariz, supra*, 24 Cal.4th at p. 113.) Since Nelsen's claims are also based on nonwaivable statutory rights, her arbitration agreement with LPI must be construed in the same fashion.

overtime. [Citation.] The statutory right to recover overtime is unwaivable. [Citation.] The Supreme Court then concluded that, in wage and hour cases, a class action waiver would frequently have an exculpatory effect and would undermine the enforcement of the statutory right to overtime pay. [Citation.] The court identified several factors which, if present, could establish a situation in which a class action waiver would undermine the enforcement of the unwaivable statutory right. These factors included: (1) individual awards 'tend to be modest' [citation]; (2) an employee suing his or her current employer is at risk of retaliation [citation]; (3) some employees may not bring individual claims because they are unaware that their legal rights have been violated [citation]; and (4) even if some individual claims are sizeable enough to provide an incentive for individual action, it may be cost effective for an employer to pay those judgments and continue to not pay overtime—only a class action can compel the employer to properly comply with the overtime law [citation]." (*Arguelles-Romero, supra,* 184 Cal.App.4th at p. 840.)

■ Thus, *Gentry* holds that when a class action is requested in a wage and hour case notwithstanding an arbitration agreement expressly precluding class or representative actions, the court must decide whether individual arbitration is so impractical as a means of vindicating employee rights that requiring it would undermine California's public policy promoting enforcement of its overtime laws. (*Arguelles-Romero, supra,* 184 Cal.App.4th at pp. 840–841.) If the court makes that determination, *Gentry* requires that it invalidate the class arbitration waiver and require class arbitration. (*Arguelles-Romero,* at pp. 840–841.) *Gentry* further held that refusing to enforce class arbitration waivers on such public policy grounds would not violate the FAA. (*Gentry, supra,* 42 Cal.4th at p. 465.)

As noted, *Gentry* applies when the arbitration agreement expressly waives class arbitration. Here, the agreement includes no express waiver of classwide arbitration, and the parties come to opposite conclusions about what inferences are to be drawn from that fact. LPI takes the position that silence cannot be construed as a waiver of class arbitration and, therefore, *Gentry* has no application. Nelsen on the other hand invites us to construe the arbitration agreement's silence as a de facto waiver of class arbitration. She correctly points out that LPI wants to have it both ways—class arbitration is precluded because the agreement does not expressly authorize it, yet *Gentry* is inapplicable because the agreement does not expressly waive such arbitration. In our view, *Gentry*'s application should not turn on whether an arbitration agreement bars class arbitration expressly or only impliedly. In either case, enforcement of the arbitration agreement according to its terms in a wage and hour case raises the identical policy issues. On the other hand, if the agreement *allows* class arbitration, Nelsen is entitled to such arbitration

without regard to *Gentry*. We must therefore determine as a threshold matter whether the arbitration agreement in this case impliedly either precludes or allows class arbitration.

### 2. *Does the Agreement Permit Class Arbitration?*

█ The starting point for our analysis is the United States Supreme Court's holding in *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662 [176 L.Ed.2d 605, 130 S.Ct. 1758] (*Stolt-Nielsen*). *Stolt-Nielsen* held "a party may not be compelled under the FAA to submit to class arbitration *unless there is a contractual basis* for concluding that the party *agreed* to do so." (559 U.S. at p. ___ [130 S.Ct. at p. 1775], first italics added.) The court did not specify what is affirmatively required in order to show there is a "contractual basis" for finding an agreement to class arbitration. At the same time, it did not hold that the intent to agree to class arbitrations must be expressly stated in the arbitration agreement. The court stated: "We have no occasion to decide what contractual basis may support a finding that the parties agreed to authorize class-action arbitration. Here . . . the parties stipulated·that there was 'no agreement' on the issue of class-action arbitration." (*Id.* at p. ___, fn. 10 [130 S.Ct. at p. 1776, fn. 10].) *Stolt-Nielsen* did hold that the agreement's "silence on the question of class arbitration" *cannot* be taken as dispositive evidence of an intent to *allow* class arbitration. (*Id.* at p. ___ [130 S.Ct. at p. 1775].) Thus, "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator *may infer solely from the fact of the parties' agreement to arbitrate.*" (*Ibid.*, italics added.) *Stolt-Nielsen* recognizes that "the interpretation of an arbitration agreement is generally a matter of state law . . . ." (*Id.* at p. ___ [130 S.Ct. at p. 1773] citing *Arthur Andersen LLP v. Carlisle* (2009) 556 U.S. 624, 630–631 [173 L.Ed.2d 832, 129 S.Ct. 1896, 1901–1902].) The question of whether there is a contractual basis for concluding the parties intended to allow class arbitration must therefore be based on state law principles of contract interpretation to the extent they are consistent with the parameters of the FAA as described in *Stolt-Nielsen*. (See *Jock v. Sterling Jewelers* (2d Cir. 2011) 646 F.3d 113, 126.) Thus, whatever other state law principles apply, consent to class arbitration cannot be inferred solely from the agreement to arbitrate, and the decision cannot be based on the court's view of sound policy regarding class arbitration but must be discernible in the contract itself. (*Stolt-Nielsen*, at pp. ___–___ [130 S.Ct. at pp. 1767–1768].)

We recognize some federal courts have decided issues of class arbitration are generally for the arbitrator to decide, at least when the arbitration agreement does not provide otherwise. (See, e.g., *Guida v. Home Savings of America, Inc.* (E.D.N.Y. 2011) 793 F.Supp.2d 611, 617–618, and cases

collected therein.)[6] Here, however, neither party has proposed we leave the question of class arbitration for the arbitrator. Both parties invite *this court* to decide the issue. LPI asks that we find the arbitration agreement does not reflect its consent to class arbitration, while Nelsen requests we either find the arbitration agreement unenforceable or interpret it to allow class arbitration. In any event, for the reasons we will discuss, we believe it is clear the agreement precludes class arbitration and do not think any reasonable arbitrator applying California law could find otherwise.

■ "The fundamental rule is that interpretation of . . . any contract . . . is governed by the mutual intent of the parties at the time they form the contract. [Citation.] The parties' intent is found, if possible, solely in the contract's written provisions. [Citation.] 'The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation.' [Citation.] If a layperson would give the contract language an unambiguous meaning, we apply that meaning." (*Lockheed Martin Corp. v. Continental Ins. Co.* (2005) 134 Cal.App.4th 187, 196 [35 Cal.Rptr.3d 799], disapproved on another point in *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1036, fn. 11 [90 Cal.Rptr.3d 1, 201 P.3d 1147].)

As an initial matter, the record does not disclose any admissible extrinsic evidence reflecting on the parties' intent with respect to class arbitration. Neither party has suggested there was any preagreement communication about whether the arbitration agreement covered class arbitration or any prelitigation conduct contradicting the positions the parties are taking on that subject now. We accordingly confine ourselves to construing the parties' intent based solely on the language of their arbitration agreement.

While the arbitration agreement in issue broadly encompasses any employment-related "claim, dispute, or controversy . . . which would otherwise require or [allow] resort to any court," it contains one very significant limitation. The agreement only covers claims, disputes, and controversies

---

[6] In reliance on *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [156 L.Ed.2d 414, 123 S.Ct. 2402] (*Bazzle*), the Court of Appeal in *Garcia v. DIRECTV, Inc.* (2004) 115 Cal.App.4th 297 [9 Cal.Rptr.3d 190] also held the arbitrator, not the court, must determine whether class arbitration was permitted by the arbitration agreement. As *Stolt-Nielsen* reminds us, however, *Bazzle* was only a plurality decision on that point and is not binding. (*Stolt-Nielsen, supra,* 559 U.S. at p. ___ [130 S.Ct. at p. 1772].) *Stolt-Nielsen* itself expressly declined to decide whether the court or the arbitrator must determine if there is a contractual basis for finding an intent to allow class arbitration. (*Ibid.*)

"between myself and Legacy Partners," that is, between Nelsen and LPI. A class action by its very nature is not a dispute or controversy "between [Nelsen] and Legacy Partners." In this case (assuming a class was certified) it would be a dispute between LPI and numerous different individuals, one of whom is Nelsen. Although LPI agreed with Nelsen to arbitrate all kinds of disputes that might arise between *them*, this choice of contractual language, by its ordinary meaning, unambiguously negates any intention by LPI to arbitrate claims or disputes to which Nelsen was not a party.[7]

The Court of Appeal in *Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th 506 [140 Cal.Rptr.3d 347] (*Kinecta*) was faced with a nearly identical question in a putative wage and hour class action brought by a credit union employee against her former employer. The employee arbitration agreement in that case covered " 'any claim, dispute, and/or controversy that either *I* may have against the Credit Union (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) or the Credit Union may have against *me*, arising from, related to, or having any relationship or connection whatsoever with *my* seeking employment with, employment by, or other association with the Credit Union . . . .' " (*Kinecta*, at p. 511, fn. 1, italics added.) The trial court had ordered the parties to class arbitration. (*Id.* at p. 509.) The Court of Appeal granted the employer's petition for writ of mandate overturning the trial court's order, holding the language of the arbitration agreement was inconsistent with an intent to allow class arbitration: "The arbitration provision identifies only two parties to the agreement, 'I, Kim Malone' and 'Kinecta Federal Credit Union and its wholly owned subsidiaries' (referred to . . . as 'the Credit Union'). It makes no reference to employee groups or to other employees of Kinecta, and instead refers exclusively to 'I,' 'me,' and 'my' (designating Malone)." (*Id.* at p. 517.) Applying *Stolt-Nielsen*, the court found there was no contractual basis for finding the agreement authorized class arbitration. (*Kinecta*, at p. 517.)

As in *Kinecta*, the arbitration contemplated by Nelsen's arbitration agreement in this case involves only disputes between two parties—Nelsen ("myself") and LPI. It does not encompass disputes between other employees or groups of employees and LPI. Other portions of the agreement reinforce the two-party intent of the agreement. The agreement provides for an appeal of the arbitrator's award "at *either party's* written request." (Italics added.) In bold letters, the agreement states, "I understand by agreeing to this binding

---

[7] The agreement encompasses employment-related disputes between Nelsen and LPI or its "owners, partners, directors, officers, managers, team members, agents, related companies, and parties affiliated with its team member benefit and health plans." The common thread in all such potential disputes is that they involve the adjudication of *Nelsen's* rights or obligations, not those of other employees or groups of employees.

arbitration provision, both *Legacy Partners and I* give up *our* rights to trial by jury." (Italics added.) All of the relevant contractual language thus contemplates a two-party arbitration. No language evinces an intent to allow class arbitration.[8]

We therefore conclude the agreement does *not* permit class arbitrations. We turn now to the question of whether the agreement is enforceable in that respect, notwithstanding *Gentry*.

### 3. *Enforceability under* Gentry

As the parties recognize, the continuing vitality of *Gentry* has been called into serious question by a recent decision of the United States Supreme Court holding that a state law rule requiring classwide arbitrations based on public policy grounds rather than the parties' arbitration agreement itself *does* violate the FAA. (See *Concepcion, supra,* 563 U.S. at pp. \_\_\_–\_\_\_ [131 S.Ct. at pp. 1748–1753].) *Concepcion* expressly overruled *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148 [30 Cal.Rptr.3d 76, 113 P.3d 1100] (*Discover Bank*), which had adopted a rule permitting the plaintiffs in certain consumer class action cases to demand classwide arbitration notwithstanding express class arbitration waivers in their arbitration agreements. (*Concepcion,* at pp. \_\_\_–\_\_\_, \_\_\_ [131 S.Ct. at pp. 1750–1751, 1753].) *Concepcion* held the so-called *Discover Bank* rule was preempted by the FAA because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." (*Concepcion,* at pp. \_\_\_, \_\_\_ [131 S.Ct. at pp. 1748, 1753].) Under the FAA, classwide arbitration cannot be imposed on a party who never agreed to it, as the *Discover Bank* rule requires. (*Concepcion,* at pp. \_\_\_–\_\_\_ [131 S.Ct. at pp. 1750–1751].)

One California appellate court and a number of federal district courts have found *Concepcion* applies equally to *Gentry* and the FAA therefore precludes California courts from ordering classwide arbitration of wage and hour claims unless the parties have agreed to it. (See *Iskanian v. CLS Transportation Los Angeles, LLC* (2012) 206 Cal.App.4th 949, 959–961 [142 Cal.Rptr.3d 372] (*Iskanian*); *Jasso v. Money Mart Express, Inc.* (N.D.Cal. 2012) 879 F.Supp.2d 1038, \_\_\_– \_\_\_ [2012 WL 1309171, pp. *4–*7] (*Jasso*); *Sanders v. Swift Transportation Co. of Arizona, LLC* (N.D.Cal. 2012) 843 F.Supp.2d 1033,

---

[8] The agreement provides that all "rules of pleading" shall apply in the arbitration to the extent applicable to civil actions in California courts. The authorization for class actions, Code of Civil Procedure section 382, is not in the rules of pleading, which are found in part 2, title 6, chapter 1 of the Code of Civil Procedure, section 420 et seq. (See *Kinecta, supra,* 205 Cal.App.4th at p. 519, fn. 3 [rejecting the argument that a similar reference to the rules of pleading evidenced an intent to allow class arbitrations].)

1037; *Lewis v. UBS Financial Services Inc.* (N.D.Cal. 2011) 818 F.Supp.2d 1161 (*Lewis*); *Murphy v. DIRECTV, Inc.* (C.D.Cal., Aug. 2, 2011, No. 2:07-cv-06465-JHN-VBKx) 2011 WL 3319574, p. *4.) The reasoning of a Ninth Circuit decision in *Coneff v. AT & T Corp.* (9th Cir. 2012) 673 F.3d 1155—finding a Washington State rule deeming class arbitration waivers unconscionable was preempted by the FAA in light of *Concepcion*—would also seem to apply equally to *Gentry*, as the federal district court held in *Jasso.* (*Jasso*, 879 F.Supp.2d at p. ___ [2012 WL 523527 at p. *7].)[9]

 But we need not decide here whether *Concepcion* abrogates the rule in *Gentry*. By its own terms, *Gentry* creates no categorical rule applicable to the enforcement of class arbitration waivers in all wage and hour cases. (*Gentry, supra*, 42 Cal.4th at p. 462.) As discussed earlier, before such waivers can be held unenforceable, *Gentry* requires a predicate showing that (1) potential individual recoveries are small; (2) there is a risk of employer retaliation; (3) absent class members are unaware of their rights; and (4) as a practical matter, only a class action can effectively compel employer overtime law compliance. (*Id.* at p. 463.) The trial court was in no position in this case to make a determination that *any* of the *Gentry* factors applied. Nelsen supported her opposition to LPI's motion to compel with a one and a half page declaration solely addressing facts relevant to procedural unconscionability. She submitted no evidence as to any of the factors discussed in *Gentry*. The record is thus wholly insufficient to apply *Gentry* even assuming for the sake of analysis *Gentry* has not been vitiated by *Concepcion*. (*Kinecta, supra*, 205 Cal.App.4th at p. 510.) Having relied on *Gentry* in her opposition to the motion to compel in the trial court, it was Nelsen's burden to come forward there with factual evidence supporting her position classwide arbitration was required. (*Kinecta*, at p. 510.) She is not entitled to a remand for the purpose of affording her a second opportunity to produce such evidence, as she now requests.

## D. *Violation of Federal Law*

Finally, Nelsen cites a recent administrative decision of the National Labor Relations Board (the Board), *D. R. Horton, Inc.* (Jan. 3, 2012) 357 NLRB

---

[9] The analysis in *Lewis* is representative: "Though acknowledging that *Concepcion* abrogated *Discover Bank*, Plaintiff nonetheless contends that *Gentry* remains viable because it addresses arbitration agreements contained in employment contracts, while *Concepcion* pertains to consumer contracts. *Concepcion* cannot be read so narrowly. . . . Like *Discover Bank*, *Gentry* advances a rule of enforceability that applies specifically to arbitration provisions, as opposed to a general rule of contract interpretation. As such, *Concepcion* effectively overrules *Gentry*." (*Lewis, supra*, 818 F.Supp.2d at p. 1167.)

No. 184 (*Horton*).[10] In *Horton*, the Board determined it was a violation of the National Labor Relations Act (NLRA) (29 U.S.C. § 151 et seq.) to require employees as a condition of employment to waive the filing of class action or other joint or collective claims regarding wages, hours, or working conditions in any forum, arbitral or judicial.[11] (*Horton*, at p. 1.) According to the Board, such a requirement violates the substantive rights vested in employees by section 7 of the NLRA to "engage in . . . concerted activities for the purpose of collective bargaining or other mutual aid or protection." (29 U.S.C. § 157.) Such mutual aid or protection, the Board asserted, had long been held—with judicial approval—to encompass "employees' ability to join together to pursue workplace grievances, including through litigation." (*Horton*, at p. 2.)

The Board further found in *Horton* that its interpretation of the NLRA to bar mandatory waivers of class arbitration over wages, hours, and working conditions did not conflict with the FAA or with the Supreme Court's decisions in *Concepcion* and *Stolt-Nielsen*. *Concepcion* involved a conflict between the FAA and *state law* which, under the supremacy clause, had to be resolved in favor of the FAA. (*Horton, supra*, 357 NLRB No. 184, at p. 12.) By contrast, the NLRA reflected federal substantive law, removing supremacy clause considerations from the equation. The Board reasoned that the strong federal policy embodied in the NLRA to protect the right of employees to engage in collective action trumped the FAA. (*Horton*, at pp. 8–12.) Further, the Board opined it was not in fact mandating class arbitration, contrary to *Concepcion* and *Stolt-Nielsen*, but holding employers may not, consistent with the NLRA, require individual arbitration without leaving a *judicial* forum open for class and collective claims. (*Horton*, at pp. 8–12.)

For a number of reasons, we decline to follow *Horton* here. Since we are not bound by the decisions of lower federal courts on questions of federal law, it follows we are also not bound by federal administrative interpretations. (See *Etcheverry v. Tri-Ag Service, Inc.* (2000) 22 Cal.4th 316, 320–321 [93 Cal.Rptr.2d 36, 993 P.2d 366], overruled in part by *Bates v. Dow Agrosciences LLC* (2005) 544 U.S. 431 [161 L.Ed.2d 687, 125 S.Ct. 1788]; *Debtor Reorganizers, Inc. v. State Bd. of Equalization* (1976) 58 Cal.App.3d 691, 696 [130 Cal.Rptr. 64].) Although we may nonetheless consider the *Horton* decision for whatever persuasive value it has, several factors counsel caution in doing so. Only two Board members subscribed to it, and the subscribing members therefore lacked the benefit of dialogue with a full board or dissenting colleagues. The subject matter of the decision—the

---

[10] *Horton* was decided after Nelsen filed her opening brief. She cited it for the first time in her reply brief. At our request, LPI responded by letter brief to the new issues raised by Nelsen based on *Horton*.

[11] The decision was rendered by two members of the Board. The third member was recused (*Horton, supra*, 357 NLRB No. 184, at p. 1, fn. 1), and two of the five positions on the Board were vacant at the time.

interplay of class action litigation, the FAA, and section 7 of the NLRA—falls well outside the Board's core expertise in collective bargaining and unfair labor practices. The Board's decision reflects a novel interpretation of section 7 and the FAA. It cites no clear precedent for its holding that "an individual who files a class . . . action regarding wages, hours or working conditions" is per se "engaged in conduct protected by Section 7," or that the FAA's policy favoring arbitration must yield to the NLRA in the manner it proposes. (*Horton,* at p. 3.) In fact, before *Horton* was decided, two federal district courts had specifically rejected arguments that class action waivers in the labor context violated section 7 of the NLRA. (*Grabowski v. C.H. Robinson* (S.D.Cal. 2011) 817 F.Supp.2d 1159, 1168–1169 [class action waiver]; *Slawienski v. Nephron Pharmaceutical Corp.* (N.D.Ga., Dec. 9, 2010, No. 1:10-CV-0460-JEC) 2010 WL 5186622, p. *2 [class arbitration waiver].)

At least two federal district court cases rejected *Horton* after it was decided. (See *Jasso, supra,* 879 F.Supp.2d at pp. ___–___ [2012 WL 1309171 at pp. *7–*10] ["Because Congress did not expressly provide [in the NLRA] that it was overriding any provision in the FAA, the Court cannot read such a provision into the NLRA and is constrained by *Concepcion* to enforce the instant agreement according to its terms."]; *LaVoice v. UBS Financial Services, Inc.* (S.D.N.Y., Jan. 13, 2012, No. 11 Civ. 2308(BSJ) (JLC)) 2012 WL 124590, p. *6 [*Concepcion* precludes any argument, such as that made in *Horton,* that an absolute right to collective action can be reconciled with the FAA's " 'overarching purpose' of 'ensuring the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings' "].) Another district court found *Horton* inapposite where, as in this case, the plaintiff's putative class action complaint and opposition to arbitration made no allegation his claims alleging violations of California wage and hour laws were covered by the NLRA. (*Sanders v. Swift Transp. Co. of Arizona, LLC, supra,* 843 F.Supp.2d at p. 1036, fn. 1.)

 As illustrated in the United States Supreme Court's decision in *CompuCredit Corp. v. Greenwood* (2012) 565 U.S. ___ [181 L.Ed.2d 586, 132 S.Ct. 665] (*CompuCredit*), a federal statute will not be found to override an arbitration agreement under the FAA unless such a congressional intent can be shown with clarity in the statute's language or legislative history. (565 U.S. at pp. ___–___ [132 S.Ct. at pp. 672–673]; see *Jasso, supra,* 879 F.Supp.2d at p. ___ [2012 WL 1309171 at p. *8].) As the district court found in *Jasso,* "there is no language in the NLRA (or in the related Norris-LaGuardia Act) demonstrating that Congress intended the employee concerted action rights therein to override the mandate of the FAA." (*Jasso,* at p. ___ [2012 WL 1309171 at p. *8].)

The Second District Court of Appeal in *Iskanian* has rejected *Horton* based on the *CompuCredit* analysis and because the decision goes well beyond the scope of the Board's administrative expertise by interpreting a statute—the FAA—that the agency is not charged with enforcing. (*Iskanian, supra,* 206 Cal.App.4th at pp. 962–963.)

■ Even if we ignored all of these authorities and found *Horton* persuasive, it would be inapplicable to this case in any event. Section 7 of the NLRA concerns the rights of covered "[e]mployees." (29 U.S.C. § 157.) Under the NLRA, "[t]he term 'employee' . . . shall *not* include . . . any individual employed as a supervisor . . . ." (29 U.S.C. § 152(3), italics added.) A "supervisor" includes anyone who exercises independent judgment in, inter alia, hiring, assigning, directing, rewarding, promoting, disciplining, or discharging other employees, or in making recommendations in those areas. (29 U.S.C. § 152(11).) There is no evidence in the record as to the nature of Nelsen's duties at LPI. Her title as "Property Manager" suggests she would not even be covered by the NLRA. Decisional law generally excludes "managerial employees" from the coverage of the NLRA. (See *NLRB v. Bell Aerospace Co.* (1974) 416 U.S. 267 [40 L.Ed.2d 134, 94 S.Ct. 1757].) Thus, we have no basis to conclude the NLRA or *Horton* have any relevance to the arbitration agreement before this court.

### E. *Injunctive Relief Claim*

In her complaint, Nelsen requested injunctive relief for LPI's alleged violations of the UCL. She contends this claim is nonarbitrable under the *Broughton-Cruz* doctrine.[12] LPI maintains (1) Nelsen waived her *Broughton-Cruz* argument by failing to raise it in the trial court, and (2) *Broughton-Cruz* has, in any event, been abrogated in the wake of *Concepcion*. We agree with LPI on both counts.

■ Nelsen asserts she is entitled to raise her *Broughton-Cruz* argument for the first time on appeal because it is based on "new authority," namely, the Supreme Court's opinion in *Concepcion* which, according to Nelsen "drastically changed the legal landscape in regards to arbitration." While it is

---

[12] *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1082–1084 [90 Cal.Rptr.2d 334, 988 P.2d 67] (*Broughton*) held claims for injunctive relief under the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA) designed to protect the public from deceptive business practices were not subject to arbitration. *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303 [133 Cal.Rptr.2d 58, 66 P.3d 1157] (*Cruz*) extended *Broughton* to include claims to enjoin unfair competition under the UCL if relief is sought to prevent further harm to the public at large rather than merely to redress or prevent injury to a plaintiff. (*Cruz,* at pp. 315–316.)

true *Concepcion* did change the legal landscape regarding arbitration, nothing in *Concepcion*'s reasoning or analysis strengthens Nelsen's *Broughton-Cruz* argument. To the contrary, as discussed *post*, *Concepcion* may have destroyed the underpinnings of *Broughton-Cruz*. That doctrine predated the proceedings in the trial court, and nothing prevented Nelsen from raising it there. In our view, she has forfeited the issue. (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1344 [119 Cal.Rptr.3d 253] [as a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal].) Since the application of *Broughton-Cruz* depends upon a disputed factual assertion—that the injunctive relief Nelsen seeks would more than incidentally benefit the public—the forfeiture rule must be stringently applied. (*Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780 [97 Cal.Rptr. 657, 489 P.2d 537].)

In any event, a recent decision of the Ninth Circuit Court of Appeals in *Kilgore v. KeyBank, National Assn.* (9th Cir. 2012) 673 F.3d 947 (*Kilgore*) casts grave doubt on whether *Broughton-Cruz* survives in the wake of *Concepcion*. We agree with *Kilgore* that *Concepcion* adopts a sweeping rule of FAA preemption. Under *Concepcion*, the FAA preempts any rule or policy rooted in state law that subjects agreements to arbitrate particular kinds of claims to more stringent standards of enforceability than contracts generally. Absolute prohibitions on the arbitration of particular kinds of claims such as that reflected in *Broughton-Cruz* are the clearest example of such policies: "Although the *Broughton-Cruz* rule may be based upon the sound public policy judgment of the California legislature, we are not free to ignore *Concepcion*'s holding that state public policy cannot trump the FAA when that policy prohibits the arbitration of a 'particular type of claim.' Therefore, we hold that 'the analysis is simple: The conflicting [*Broughton-Cruz*] rule is displaced by the FAA.' *Concepcion*, 131 S.Ct. 1747. *Concepcion* allows for no other conclusion." (*Kilgore*, at p. 963.) Since *Broughton-Cruz* prohibits outright the arbitration of claims for public injunctive relief, it is in conflict with the FAA. Nelsen's argument for exempting that claim from arbitration would have to be rejected on the merits if she had not forfeited it.

*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193 [142 Cal.Rptr.3d 312], cited by Nelsen following oral argument, does not convince us otherwise. *Hoover* does not mention *Kilgore* or analyze *Concepcion*'s potential relevance to the continued application of *Broughton-Cruz*. Moreover, the court in *Hoover* found the arbitration agreement in issue was not subject to the FAA and did not encompass state statutory claims. (*Hoover*, at pp. 1208–1209.) That is not our case.

Nelsen's injunctive relief claim must be arbitrated.

## III. DISPOSITION

We deny Nelsen's petition for writ of mandate and affirm the correctness of the trial court's order compelling Nelsen to individual arbitration with LPI.

Marchiano, P. J., and Dondero, J., concurred.

A petition for a rehearing was denied August 14, 2012, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 31, 2012, S204953.