Filed 6/14/13  Brown v. UBS Financial Services CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| GARY BROWN, Individually and as Trustee, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> UBS FINANCIAL SERVICES, INC., et al., <br><br> Defendants and Respondents. | B242971 <br> (Los Angeles County <br> Super. Ct. No. SC109123) <br><br><br> ORDER MODIFYING OPINION <br> AND DENYING REHEARING <br> [NO CHANGE IN JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed herein on May 24, 2013 be modified as follows:  On page 12, lines 23-25 and page 13, line 1, delete the parenthetical remark:

[broker's agreement with his firm requiring arbitration of "any dispute" arising out of his sale of securities obliged broker to arbitrate his wrongful termination claim predicated on independent employment contract]

and replace it with:

[broker's agreement with national association of securities dealers requiring arbitration of "any dispute" between broker and his firm obliged broker to arbitrate his wrongful termination claim predicated on independent employment contract with firm]

Appellant's petition for rehearing is denied.  The modification does not change the judgment.

_____
*WILLHITE, Acting P. J.,      MANELLA, J.          SUZUKAWA, J.

Filed 5/24/13  Brown v. UBS Financial Services CA2/4  (unmodified version)

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GARY BROWN, Individually and as Trustee, etc.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>UBS FINANCIAL SERVICES, INC., et al.,<br><br>    Defendants and Respondents. | B242971<br>(Los Angeles County<br>Super. Ct. No. SC109123) |

APPEAL from a judgment of the Superior Court of Los Angeles, John Segal and H. Chester Horn, Judges.  Affirmed.

Rehm & Rogari and Ralph Rogari for Plaintiff and Appellant.

Keesal, Young & Logan and Michael M. Gless, for Defendants and Respondents.

Appellant Gary Brown challenges the trial court's confirmation of an arbitration award in favor of respondents UBS Financial Services, Inc. (UBS), and Barry Bayat. He argues that the court erred in granting respondents' motion to compel arbitration. We affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A. *Complaint*

In August 2010, appellant initiated the underlying action against respondents. In the original complaint, appellant asserted two claims for breach of fiduciary duty in his capacity as trustee of the Estelle Brown Trust (trust).[1] The complaint alleged that some time before 2002, Estelle Brown's husband, Robert M. Brown, placed significant portions of their joint assets in a UBS account controlled by Bayat.[2] After Robert died, the trust was created in 2002, and was funded with the assets in the UBS account. Estelle and her son Robert Jr. acted as the trustees. Because both trustees were unsophisticated in financial matters and Estelle was then almost 80 years old, the trustees "relied upon [respondents] for investment management and control of [the] [t]rust assets." According to the complaint, respondents improperly adopted a high risk investment strategy for the assets, and otherwise breached their fiduciary duties. As a result, the trust suffered losses exceeding $300,000.

---

[1]    Appellant is one of three sons of Estelle and Robert M. Brown.

[2]    Because key individuals involved in the trust share a surname, we generally refer to them by their first names.

B. *Motion For An Order to Compel Arbitration*

On September 10, 2010, respondents sought an order compelling appellant to submit his claims to arbitration. Supporting the motion was a declaration from Evelyn C. Best, an attorney with the law firm of Keesal, Young & Logan, which represented respondents. Best stated that in February 2002, Estelle and Robert Jr. opened a securities brokerage account.

Attached to Best's declaration were documents she identified as the pertinent account application and "Master Account Agreement." The documents themselves referred to the applicable financial services entity as "UBS PaineWebber." Within the account application was a signature page disclosing what appeared to be Estelle's and Robert Jr.'s signatures. On the same page, above those signatures, was a paragraph in bold print, stating: "I UNDERSTAND, ACKNOWLEDGE AND AGREE: . . . that in accordance with the last paragraph of the Master Account Agreement entitled 'Arbitration' I am agreeing in advance to arbitrate any controversies which may arise with, among others, UBS PaineWebber in accordance with the terms outlined therein . . . ."

The accompanying Master Account Agreement stated that its provisions, including the arbitration provisions, were binding upon the "[c]lient[s]," as well as their "authorized agents, personal representatives, heirs, successors and assigns." The agreement further provided: "Client agrees . . . that any and all controversies which may arise between UBS PaineWebber [and] any of [its] employees . . . and Client concerning any account, transaction, dispute or the construction, performance or breach of this Agreement or *any other agreement, whether entered into prior to, on or subsequent to the date hereof,* shall be determined by arbitration." (Italics added.)

3

Appellant's opposition to the motion contended that his claims were not subject to the arbitration provisions of the 2002 account application and agreement. He maintained that he was not a signatory to the account application, and that there was no evidence establishing UBS's relationship to UBS PaineWebber. He also argued that Best's declaration was insufficient to show the existence of an arbitration agreement, arguing that the declaration was hearsay, that Best lacked personal knowledge of the pertinent events, and that she was incapable of authenticating the documents. Appellant further requested an opportunity to conduct discovery into Robert Jr.'s execution of the 2002 account application, noting that Robert Jr. was now dead.

Respondents' reply maintained that UBS was the successor of UBS PaineWebber. Supporting the reply was a declaration from Bayat, who stated that he was a UBS employee and "the [f]inancial advisor for the [trust] account from its commencement in 2002." Attached to Bayat's declaration were copies of the UBS PaineWebber documents accompanying Best's declaration, which Bayat collectively described as the "February 2002 Client Trust Agreement."

Respondents' reply also argued that in 2005, Estelle and Robert Jr., in their capacity as trustees, executed new agreements with UBS containing arbitration provisions similar to those found in the 2002 agreement. Attached to Bayat's declaration were two UBS documents that he characterized as the "Client Trust Agreement[s]" that Estelle and Robert Jr. executed in 2005. The documents, dated June 8, 2005 and July 19, 2005, were applications for additional services for the account, which they characterize as the "Estelle Brown Trust."[3] On the signature

---

[3]     The 2005 documents bore the same account number as the 2002 account application and agreement. The June 2005 application sought the right to make online transactions, and the July 2005 application requested wallet checks.

4

page of each application, above what appeared to be Estelle's and Robert Jr.'s signatures, were paragraphs in bold print, stating: "ACCOUNT HOLDER UNDERSTANDS[,] ACKNOWEDGES AND AGREES . . . that in accordance with the last paragraph of the Master Account Agreement entitled 'Arbitration' the [a]ccount [h]older agrees in advance to arbitrate any controversies which may arise with[,] among others[,] [UBS] in accordance with the terms outlined therein . . . ." Although Bayat's declaration also purported to provide the pertinent UBS Master Account Agreements for the 2005 applications, those agreements were not attached to the declaration.

On October 8, 2010, the trial court conducted a hearing on the motion to compel. Although the court's tentative ruling was to compel arbitration, it granted appellant's request for an opportunity to submit further briefing on whether respondents were required to authenticate the purported arbitration agreements, and whether a trustee's arbitration agreement binds subsequent trustees.[4]

C. *First Amended Complaint And Ruling On Motion to Compel*

On October 15, 2010, appellant filed his first amended complaint (FAC), and a supplemental opposition to the pending motion to compel arbitration. The FAC contained claims for fraud, breach of fiduciary duty, and unfair business practices which appellant asserted as an individual, as beneficiary of the trust, and as trustee. The FAC alleged that after his father died, appellant assisted his mother Estelle in managing the family's assets. After the trust was created in 2002, it was funded with his late father's and Estelle's assets in a UBS account. The beneficiaries were appellant and his siblings. The initial trustees -- that is, Estelle

---

[4]     The record before us contains no reporter's transcript of the initial hearing.

5

and Robert Jr. -- relied on appellant and respondents for "investment management and direction" of the trust's assets.

According to the FAC, respondents engaged in fraud and other misconduct, thereby breaching their fiduciary duties to the trustees. Furthermore, Bayat "preyed upon" Estelle's mental incapacity to induce her to breach her duties as trustee, and respondents otherwise contravened duties owed to the trust beneficiaries. The FAC also alleged, inter alia, that respondents' misconduct constituted "unlawful, unfair or fraudulent business act[s] or practices."

Appellant's supplemental opposition contended that arbitration should not be ordered with respect to the claims asserted in the FAC. He argued that Best's declaration was inadequate to establish the existence of an arbitration agreement binding on him. He further denied that he was bound by the arbitration provisions of the 2005 agreements, arguing that Estelle and Robert Jr. did not execute the agreements in their capacity as trustees. In addition, appellant maintained that the 2005 agreements did not oblige him to arbitrate the claims that he asserted as an individual and as a beneficiary of the trust.

Respondents' supplemental brief contended that Bayat's declaration in support of their reply adequately authenticated Estelle and Robert Jr.'s 2002 agreement and proved the existence of Estelle and Robert Jr.'s 2005 agreements. They also argued that the arbitration provisions of those agreements encompassed appellant's claims as a trustee and a trust beneficiary. In support of these contentions, respondents submitted a second declaration from Bayat, who provided a copy of the UBS Master Account Agreement in effect in June 2005.[5]

---

[5] Also attached to Bayat's second declaration were the pertinent declaration of trust, as well as 2002 UBS PaineWebber documents executed by Estelle and Robert Jr.,
*(Fn. continued on next page.)*

6

Respondents' supplemental brief further argued that appellant's claims as an individual fell within the scope of an arbitration agreement that he personally executed in 2002 regarding his own account with UBS PaineWebber. According to Bayat's second declaration, on May 28, 2002, appellant executed his own account application and agreement with UBS PaineWebber. Attached to Bayat's second declaration were copies of those documents. On the signature page of the account application, above what appeared to be appellant's signature, was a paragraph in bold letters, stating: "I UNDERSTAND, ACKNOWLEDGE AND AGREE: . . . that in accordance with the last paragraph of the Master Account Agreement entitled 'Arbitration' I am agreeing in advance to arbitrate any controversies which may arise with, among others, UBS PaineWebber in accordance with the terms outlined therein . . . ." The pertinent Master Account Agreement provided for arbitration of "any and all controversies" regarding "any account[], transaction, dispute or the construction, performance or breach of this Agreement or *any other agreement*, whether entered into prior to, on or subsequent to the date hereof . . . ." (Italics added.)

On October 27, 2010, following a hearing, the trial court ordered arbitration regarding the claims asserted in the FAC and stayed the proceeding pending the completion of the arbitration. In so ruling, the court concluded that appellant was obliged to arbitrate his claims as trustee and trust beneficiary under Estelle and Robert Jr.'s 2002 agreement.[6] Later, in December 2010, the court denied appellant's motion for reconsideration.

---

designating appellant as a successor trustee and authorizing him to make trades related to their account.

[6] The record before us contains no reporter's transcript of the hearing.

D.  *Subsequent Proceedings*

The arbitration occurred before a three-member panel of the Financial Industry Regulatory Authority.  In April 2012, following an evidentiary hearing, the arbitrators issued their award.  The arbitrators denied appellant's claims, and recommended that references to the arbitration be expunged from Bayat's records.

On May 11, 2012, respondents filed a petition to confirm the award.  Appellant opposed the petition and sought to vacate the award on several grounds, including that he never agreed to arbitrate his claims.  Following a hearing, the trial court confirmed the award and denied the petition to vacate.  On June 6, 2012, judgment was entered confirming the award.  This appeal followed.

## DISCUSSION

Appellant challenges the grant of the motion to compel arbitration on several grounds.  He contends, inter alia, that there was insufficient evidence that the claims asserted in the FAC were subject to an arbitration agreement, and that his claim for unfair business practices is nonarbitrable.  For the reasons explained below, we reject his contentions.

A.  *Governing Principles*

Our analysis follows established principles.  Public policy favors contractual arbitration as a means of resolving disputes.  (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 342.)  Generally, one must be a party to an arbitration agreement to be bound by it.  (*Westra v. Marcus & Millichap Real Estate Investment Brokerage Co., Inc.* (2005) 129 Cal.App.4th 759, 763.)  Nonetheless, the rule that only parties to an arbitration agreement may be compelled to arbitrate is subject to several exceptions.  (*Suh v. Superior Court*

8

(2010) 181 Cal.App.4th 1504, 1513 [discussing theories under which nonsignatories may be bound to arbitrate claims].)

A petition to compel arbitration is a suit in equity seeking specific performance of an arbitration agreement. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 347 (*Hotels Nevada*).) Code of Civil Procedure section 1281.2 provides that "on petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that . . . [g]rounds exist for the revocation of the agreement."[7] To the extent the trial court resolved factual disputes in ordering arbitration, we review its determinations for the existence of substantial evidence. (*Hotels Nevada, supra*, 203 Cal.App.4th at p. 348.)

Section 1281.2 establishes "a summary proceeding" for resolving petitions to compel arbitration. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*).) In *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*), our Supreme Court explained the requisite procedure: "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the

---

**7** All further statutory citations are to the Code of Civil Procedure, unless otherwise indicated.

9

petitioner bears the burden of proving its existence by a preponderance of the evidence. If the party opposing the petition raises a defense to enforcement . . . that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense." Furthermore, facts relevant to the enforceability of the arbitration agreement "are to be proven by affidavit or declaration and documentary evidence, with oral testimony taken only in the court's discretion." (*Id*. at pp. 413-414.)

In examining the ruling on the motion to compel, we are not bound by the trial court's rationale. (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683, fn. 3; *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 645 & fn. 6.) On appeal, "[w]e do not review the trial court's reasoning, but rather its ruling. A trial court's order is affirmed if correct on any theory . . . . [Citations]." (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15-16.) Thus, we may affirm the ruling "on any basis presented by the record whether or not relied upon by the trial court." (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1.)


B. *Analysis*

We conclude that the trial court properly ordered appellant to arbitrate the claims in the FAC. As explained below, respondents established that appellant's claims were subject to at least one arbitration agreement regarding the trust account, and also to an arbitration agreement that appellant executed as an individual. Although appellant asserted objections to respondents' evidence, he submitted no conflicting evidence. Because respondents' showing was undisputed, we find no error in the trial court's ruling.

In assessing the adequacy of respondents' showing, we may properly examine the allegations in the FAC and respondents' evidence. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 709-710 (*Molecular Analytical Systems*).) Prior to the ruling on the motion to compel arbitration, respondents submitted two declarations from Bayat, who stated that he was a UBS employee and the financial advisor for the trust account since its creation in 2002. Accompanying Bayat's declarations were copies of four agreements containing arbitration provisions: (1) Estelle and Robert Jr.'s 2002 account application (and the related Master Account Agreement) regarding UBS PaineWebber account No. TP24576BB; (2) Estelle and Robert Jr.'s June 2005 application (and the related Master Account Agreement effective June 2005) for the same UBS account; (3) Estelle and Robert Jr.'s July 2005 application for the same UBS account; and (4) appellant's own 2002 account application (and the related Master Account Agreement) for UBS PaineWebber account No. TP25898BB.

The allegations in the FAC and respondents' evidence are sufficient to show that UBS was UBS PaineWebber's successor in interest, for purposes of the arbitration provisions in the agreements. The FAC alleges that when the trust was created, it was funded with Estelle's and Robert Sr.'s assets "maintained in an account at UBS." These allegations, coupled with Bayat's declaration statements, and the uniform account number found on items (1) through (3), establish that UBS PaineWebber was, in fact, UBS's predecessor.

We further conclude that the broad arbitration provisions of the agreements encompass appellants' claims as trustee, trust beneficiary, and as an individual. Generally, arbitration clauses are construed in favor of the arbitrability of claims. (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 641-642.)

11

Here, both Master Account Agreements related to items (1) and (2) state that their arbitration provisions are binding upon the "clients" and their "successors." Furthermore, the Master Account Agreements related to items (1), (2), and (4) contain materially identical terms regarding the broad scope of arbitration. All provided for arbitration of "*any and all controversies*" regarding "*any account*[], transaction, dispute or the construction, performance or breach of this Agreement or *any other agreement, whether entered into prior to, on or subsequent to the date hereof . . . .*" (Italics added.)

In view of these provisions, the agreements obliged appellant to arbitrate his claims, to the extent he asserted them as trustee. Because the June 2005 agreement (item (2)) was executed by the original trustees, its arbitration provisions are binding on their successor trustees, including appellant. As explained in *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 613, footnote 5, because "'a new trustee "succeed[s] to *all* the rights, duties, and responsibilities of his predecessors[,]"' . . . a successor trustee is bound by a valid arbitration agreement executed by a predecessor."

Moreover, appellant's own 2002 agreement (item (4)) obliged him to arbitrate his claims, insofar as he asserted them as trust beneficiary or as an individual. Because the arbitration provisions of that agreement sweep broadly to encompass not only disputes arising from appellant's own account, but also those arising from "*any other agreement*" (italics added), he is required to arbitrate "any and all controversies" regarding the trust account. (See *Cione v. Foresters Equity Services, Inc.*, *supra*, 58 Cal.App.4th at pp. 630-631, 640-646 [broker's agreement with his firm requiring arbitration of "any dispute" arising out of his sale of securities obliged broker to arbitrate his wrongful termination claim predicated on

12

independent employment contract].)[8]  Accordingly, respondents's showing was sufficient to establish that the claims in the FAC were subject to arbitration.


C.  *Appellant's Contentions*

Appellant challenges the trial court's ruling on several grounds, which we address below.


1.  *Adequacy of Prima Facie Showing*

Appellant contends that respondents' prima facie showing regarding the arbitration agreements was inadequate because they failed to authenticate the agreements executed by the trustees.  We disagree.

In *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 217-219 (*Condee*), the appellate court held that for purposes of a petition to compel arbitration, the petitioner may make an adequate prima facie showing regarding the existence of an arbitration agreement without submitting evidence sufficient to authenticate the signatures on the agreement.  There, the plaintiffs asserted claims arising out of the death of a relative living in a residential care center.  (*Id.* at p. 217.)  In seeking to compel arbitration on the basis of an agreement executed when the relative was admitted to the center, the defendants submitted a declaration from their custodian of records purporting to authenticate the agreement.  (*Ibid.*)  The trial court denied the petition on the grounds of

---

[8]    Respondents maintain that the arbitration provisions in items (1) through (3) encompass appellant's claims as a trust beneficiary for a different reason, namely, that when trustees execute an arbitration agreement, nonsignatory trust beneficiaries may be subject to the agreement as third party beneficiaries.  In view of our conclusion regarding the arbitration provisions in item (4), it is unnecessary to examine this question.

13

inadequate authentication, even though the plaintiffs had not challenged the authenticity of the signatures on the agreement. (*Ibid*.)

Reversing, the appellate court concluded that in the context of a petition to compel arbitration, "it is not necessary to follow the normal procedures of document authentication." (*Condee*, *supra*, 88 Cal.App.4th at p. 218.) Pointing to the language of section 1281.2, the court stated that "as a preliminary matter the [trial] court is only required to make a finding of the agreement's existence, not an evidentiary determination of its validity." (*Condee, supra,* at pp. 218-219.) The court also noted that the pertinent court rule did not oblige the petitioner to introduce the agreement into evidence (Cal. Rules of Court, rule 3.1330).

Following *Condee*, at least one appellate court has determined that a showing similar to that offered by respondents was sufficient to carry the petitioner's initial burden under section 1281.2. In *Molecular Analytical Systems*, an action involving three corporations, the plaintiff's complaint asserted claims predicated on a contract. (*Molecular Analytical Systems*, *supra,* 186 Cal.App.4th at pp. 701-702.) In seeking to compel arbitration on the basis of the contract's arbitration provisions, the defendants pointed to the complaint's allegations, and also submitted a declaration from an employee, to which a copy of the contract was attached. (*Id*. at p. 702.) Relying on *Rosenthal* and *Condee*, the appellate court concluded that the defendants "made a sufficient prima facie showing of an agreement to arbitrate, based not only on the allegations of the complaint but also on their moving papers and on their proffer of the [agreement]." (*Id*. at p. 710.) For the reasons discussed above (see pt. B. *ante*), we reach the same conclusion here.

Pointing primarily to *Toal v. Tardif* (2009) 178 Cal.App.4th 1208 (*Toal*) and *Engalla*, *supra*, 15 Cal.4th 951, appellant argues that notwithstanding *Condee*,

14

respondents were obliged to present evidence that the agreements were "valid," including evidence sufficient to authenticate the signatures on the agreements. We disagree. As explained below, neither *Toal* nor *Engalla* suggest that respondents were required to make a greater showing than required under *Molecular Analytical Systems.*

In *Toal*, the plaintiffs asserted claims against the defendants predicated on the sale of a house. (*Toal, supra,* 178 Cal.App.4th at p. 1213.) During the litigation, the parties' counsel executed a stipulation regarding arbitration of the claims. (*Ibid.*) As the appellate court there noted, the record contained no indication that the parties themselves had agreed to the stipulation. (*Ibid.*) After arbitration was completed and the award had been corrected, the plaintiffs filed a petition to confirm the corrected award, but submitted neither the stipulation nor evidence regarding the existence of an arbitration agreement. (*Id.* at p. 1214.) In opposition, one of the defendants asserted that he had not authorized his attorney to enter into the stipulation. (*Id.* at p. 1215.) The trial court nonetheless granted the petition. (*Ibid.*) The appellate court reversed, reasoning that under *Rosenthal*, "the party seeking to enforce an award must prove . . . that a valid arbitration contract exists." (*Id.* at p. 1220.) In a footnote, the court also disagreed with *Condee*, to the extent that decision suggested that petitioners may carry their initial burden by merely alleging the existence of an arbitration agreement. (*Id.* at p. 1219, fn. 8.)

In *Engalla*, the trial court, in ruling on a petition to compel arbitration, treated the petition "as a type of summary judgment motion, in which it was obliged to determine only that there was a legitimate factual dispute among the parties and not to resolve that dispute." (*Engalla*, *supra,* 15 Cal.4th at p. 972.) In concluding that the matter required a remand for a determination of the factual

15

issues, our Supreme Court stated that it had explained the appropriate procedure in *Rosenthal*, which it summarized as follows: "The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." (*Ibid.*)

Viewed in context, the discussions in *Toal* and *Engalla* disclose no inadequacy in respondents' prima facie showing.**9** Notwithstanding the remarks in those decisions that *Rosenthal* requires the petitioner to show the "validity" of the agreement, *Rosenthal* states only that "the petitioner bears the burden of proving [the agreement's] *existence . . . .*" (*Rosenthal*, *supra*, 14 Cal.4th at p. 413, italics added.) In our view, *Molecular Analytical Systems* correctly reflects the application of this requirement in the circumstances before us.

Furthermore, neither *Toal* nor *Engalla* suggests that *Molecular Analytical Systems* is wrongly decided. *Toal* stands for a narrow proposition, namely, that petitioners cannot carry their initial burden against nonsignatories to an arbitration agreement simply by alleging the existence of a binding agreement executed by the nonsignatories' counsel. That proposition is inapplicable here, as respondents provided sufficient evidence of the existence of arbitration agreements binding on appellant.

---

**9**     Generally, "language contained in a judicial opinion is '"to be understood in the light of the facts and issue then before the court, and an opinion is not authority for a proposition not therein considered. [Citation.]"' [Citations.]" (*People v. Banks* (1993) 6 Cal.4th 926, 945.) Thus, when questions about an opinion's import arise, the opinion "should receive a reasonable interpretation [citation] and an interpretation which reflects the circumstances under which it was rendered [citation]" (*Young v. Metropolitan Life Ins. Co.* (1971) 20 Cal.App.3d 777, 782), and its statements should be considered in context (see *Pullman Co. v. Industrial Acc. Com.* (1946) 28 Cal.2d 379, 388).

Nor does *Engalla* require a petitioner to "validate" an arbitration agreement or authenticate the signatures found on it. There, the sole issue before the Supreme Court concerned whether the trial court must make factual determinations in ruling on a petition to compel arbitration. Because the Supreme Court resolved that issue by pointing to *Rosenthal*, *Engalla* stands for the unremarkable proposition that *Rosenthal* elaborates the proper procedure. In sum, we see no deficiency in respondents' prima facie showing.

### 2. *Former Trustees' Consent*

Appellant contends that respondents submitted no evidence establishing that the former trustees read and consented to the Master Account Agreements related to the 2002 and 2005 agreements. However, for purposes of a petition to compel arbitration, absent special circumstances, a party is bound by the provisions of an arbitration agreement, even when some terms are incorporated by reference. (*King v. Larsen Realty, Inc*. (1981) 121 Cal.App.3d 349, 358.) Generally, the party opposing arbitration must show that the agreement was a contract of adhesion whose arbitration provisions either (1) were not "'conspicuous, plain and clear'" or (2) "operate[d] to defeat the reasonable expectations of the parties." (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710, quoting *Steven v. Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 878.) Here, the former trustees placed their signatures on pages that disclosed the existence of arbitration provisions in bold letters and referred to the Master Accounts Agreements. As appellant made no showing regarding the existence of any other special circumstances, his contention fails.

### 3. *Appellant's 2002 Account Agreement*

Appellant contends that in the June 2005 Master Account Agreement regarding the trust account, UBS disclaimed its predecessor's duties and obligations with respect to his 2002 agreement regarding his own account. The June 2005 Master Account Agreement states in pertinent part: "Entire Agreement. [¶] The provisions of this Agreement constitute . . . the entire agreement between Client and [UBS] with respect to *the Account* and supercede any prior agreements relating thereto." (Italics omitted and added.) Appellant argues that this provision establishes that UBS had no right under his 2002 agreement to compel arbitration of his claims asserted as an individual and trust beneficiary. We disagree.

In view of the italicized phrase, the provision, if effective, operated solely to supercede prior agreements regarding the trust account (No. TP24576BB), rather than appellant's own account (No. TP25898BB). Furthermore, as explained above (see pt. B., *ante*), respondents made an adequate showing that the arbitration provisions of appellant's 2002 agreement with UBS PaineWebber encompassed his claims as an individual and a trust beneficiary, and that UBS was the successor of UBS PaineWebber. We therefore reject appellant's contention.

### 4. *Due Process*

Appellant contends he was denied due process because respondents submitted Bayat's first declaration with their reply to appellant's opposition and his second declaration with their supplemental brief. We conclude that he has forfeited his contentions of error.

In ruling on a motion, the trial court may allow tardy declarations. (*Alvak Enterprises v. Phillips* (1959) 167 Cal.App.2d 69, 74-75.) Moreover, it may continue the hearing on a motion, provided its decision "is based on a reasoned

18

judgment and complies with legal principles and policies appropriate to the case before the court." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984.) To preserve due process contentions concerning a belated declaration, a party must object to the declaration before the trial court. (*California Retail Portfolio Fund GMBH & Co. KG v. Hopkins Real Estate Group* (2011) 193 Cal.App.4th 849, 861.)

Regarding Bayat's first declaration, which was filed shortly before the initial hearing on respondents' motion to compel, the trial court continued the hearing on the motion at appellant's request and permitted him to submit additional briefing. Appellant's supplemental opposition discussed Bayat's declaration, arguing that the copies of the 2005 agreements were insufficient to show that Estelle and Robert Jr. entered into arbitration agreements as trustees. We thus find no denial of due process in connection with Bayat's first declaration.

Furthermore, the limited record that appellant has provided discloses no reversible error regarding Bayat's second declaration. On the same date that appellant tendered his supplemental opposition, he also filed his FAC, which contained new claims that appellant asserted as a trust beneficiary and as an individual. Respondents were thus presented with a moving target in seeking to compel arbitration on appellant's claims. Accordingly, when respondents submitted Bayat's second declaration with their supplemental brief, this constituted their first opportunity to address appellant's new claims. Because the record reveals neither a timely objection to Bayat's second declaration nor a request for additional briefing and a continuance, appellant has forfeited his

contention that he was denied due process by the declaration. (See *Hotels Nevada*, *supra*, 203 Cal.App.4th at p. 348.)**10**

### 5. *Discovery*

Appellant contends he was improperly denied discovery regarding the arbitration agreements. Generally, "parties to a . . . section 1281.2 proceeding have discovery rights under the Civil Discovery Act [§ 2016.010 et seq.], subject to the relevancy requirement and other provisions limiting the scope and timing of that discovery." (*Bouton v. USAA Casualty Ins. Co.* (2008) 167 Cal.App.4th 412, 427.) Nonetheless, the failure to afford a party discovery may be harmless. (*Rosenthal*, *supra*, 14 Cal.4th at pp. 412-413.) As explained below, that is the case here.

Appellant's initial request for discovery was made in his original opposition to respondent's motion. There, appellant argued that he required an opportunity to conduct discovery into Robert Jr.'s execution of the 2002 agreement because Robert was dead. Later, at the initial hearing on respondents' motion, appellant appears to have requested discovery regarding the 2005 agreements executed by Estelle and Robert Jr., which were attached to Bayat's first declaration. In seeking discovery, he argued that "it was impossible to know what Robert [Jr.] and Estelle purportedly agreed to," as no copy of the pertinent Master Account Agreement accompanied Bayat's first declaration. He also maintained that the 2005 agreements were "unauthenticated."

---

**10** In a related contention, appellant maintains that Bayat's declarations were inadmissible because Bayat executed them "under penalty of perjury under the laws of the State of New York." This contention has also been forfeited for want of a timely objection. (*Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 648.)

Following the initial hearing on the motion, appellant submitted the FAC, which alleged that after the trust was created in 2002, Estelle and Robert Jr. relied on appellant for "investment management and direction of [t]rust assets." The FAC further alleged that no later than December 2006, at the request of the trustees, he began receiving monthly statements regarding the trust account and spoke frequently to Bayat.

Furthermore, attached to Bayat's second declaration was the Master Account Agreement related to Estelle and Robert Jr.'s June 2005 agreement, as well as appellant's own 2002 agreement. Also accompanying the declaration was a July 2002 UBS PaineWebber document which authorized appellant to conduct trades on the trust account. On the document's signature page are what appear to be Estelle's, Robert Jr.'s, and appellant's signatures. The record discloses no request for discovery related to the documents submitted with Bayat's second declaration.

In view of the events following the initial hearing, the denial of appellant's request for discovery into Estelle and Robert Jr.'s 2002 agreement was not prejudicial. As explained above (see pt. B, *ante*), the trial court's ruling is properly affirmed on the basis of Estelle and Robert Jr.'s June 2005 agreement and its accompanying Master Account Agreement, as well as appellant's own 2002 agreement.

Nor can the denial of appellant's request for discovery regarding Estelle and Robert Jr.'s June 2005 agreement be regarded as prejudicial, as Bayat's second declaration provided appellant with the Master Account Agreement that he sought. Furthermore, the allegations in the FAC and the 2002 trading authorization show his familiarity with Estelle's and Robert Jr.'s signatures, for purposes of mounting

21

a challenge to the authenticity of the signatures on the June 2005 agreement. Accordingly, appellant has failed to establish reversible error.


6. *Unfair Business Practices Claim*

Relying on *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303 (*Cruz*), appellant contends that under the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.), his claim for injunctive relief under the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) is not subject to arbitration.[11]  However, because appellant failed to present this contention to the trial court, he has forfeited it.  (*Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115, 1135-1136 (*Nelsen*).)[12]

Furthermore, we would reject the contention were we to consider it.  In *Cruz*, our Supreme Court concluded that claims for injunctive relief under the UCL are nonarbitrable under the FAA if they seek to prevent harm to the public at large.  (*Cruz, supra,* 30 Cal.4th at pp. 315-316.)  However, in *AT & T Mobility LLC v. Concepcion* (2011) ___U.S.___ [131 S.Ct. 1740, 1748-1749]

---

[11]     In seeking arbitration on appellant's claims, respondents' motion invoked both the FAA and California arbitration statutes.

[12]     Appellant suggests that he may raise his contention for the first time on appeal because it presents only "legal issues."  In limited circumstances, an appellate court may consider a new theory "where it involves a pure question of the application of law to undisputed facts."  (*Yeap v. Leake* (1997) 60 Cal.App.4th 591, 599, fn. 6.)  Nonetheless, under this exception to the rule barring new theories on appeal, a party may not offer a theory that "contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial[.]"  (*Panopulos v. Maderis* (1956) 47 Cal.2d 337, 341.)  The exception is thus inapplicable here, as appellant's contention under *Cruz* hinges on a fact subject to dispute, namely, whether the injunctive relief appellant sought "would more than incidentally benefit the public."  (*Nelsen*, *supra*, 207 Cal.App.4th at p. 1136.)

(*Concepcion*), the United States Supreme Court held that the FAA preempts any rule based on state law that subjects agreements to arbitrate claims to more stringent standards than those stated in the FAA. As explained in *Nelsen*, the holding in *Concepcion* appears to compel the conclusion that UCL claims for injunctive relief are arbitrable under the FAA, notwithstanding *Cruz*. (*Nelsen*, *supra*, 207 Cal.App.4th at pp. 1135-1136.) In any event, regardless of *Cruz's* continuing validity, appellant's contention would fail, as there is no evidence that the injunction he sought would benefit the public. In sum, appellant has failed to show reversible error regarding his UCL claim.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.

We concur:


WILLHITE, Acting P. J.


SUZUKAWA, J.