Filed 11/17/14  Ramos v. Frey's Electronics CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LEO RAMOS, | B246404 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC486879) |
| v. | |
| FRY'S ELECTRONICS, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Anthony J. Mohr, Judge.  Reversed in part and remanded for further proceedings.

Matthew & George, Abraham Matthew, Jacob George and Mazyar Mazarei, for Plaintiff and Respondent.

Sheppard, Mullin, Richter & Hampton, Richard J. Simmons and Matthew M. Sonne, for Defendant and Appellant.

_____

Leo Ramos brought a class action complaint against his employer, Fry's Electronics, for unpaid overtime and other violations of the Labor Code. The complaint also alleged a representative claim under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, §§ 2698 *et seq.*)[1] on behalf of all aggrieved employees. Fry's filed a petition to compel arbitration asserting that Ramos had entered into an employment agreement that required him to arbitrate all of his claims on an individual basis. The trial court denied the petition, concluding that: (1) the agreement's class arbitration waiver was unenforceable pursuant to *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*); and (2) any waiver of Ramos's right to pursue a representative PAGA claim was contrary to public policy and unenforceable. Fry's appealed.

During the pendency of the appeal, the California Supreme Court issued *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), which held that: (1) the Federal Arbitration Act (FAA) preempts *Gentry's* rule against class arbitration waivers in employment contracts; and (2) the FAA does not preempt California's rule prohibiting the waiver of representative PAGA claims. In light of *Iskanian*, we reverse in part and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Events Preceding Fry's's Petition to Compel Arbitration*

#### 1. *Ramos's arbitration agreement*

In January of 2010, defendant Fry's Electronics hired plaintiff Leo Ramos as a customer service representative and car electronics technician. On the day Ramos was hired, a Fry's employee requested that he sign an arbitration agreement as a condition of his employment. The agreement stated, in part: "[Ramos and Fry's] hereby agree that any and all disputes between [Ramos and Fry's] (including related disputes between [Ramos] and other [employees] or agents of [Fry's] . . . ) arising from or in any way related to [Ramos's] employment by [Fry's] including but not limited to claims for damages and violations of state or federal laws and regulations related to harassment,

---

[1]     Unless otherwise noted, all further statutory citations are to the Labor Code.

2

wrongful termination and/or discrimination . . . . shall be determined and decided by final and binding arbitration pursuant to the provisions of the Federal Arbitration Act [FAA]and to state law to the extent state law would otherwise be allocable, consistent with the [FAA]. . .”

The agreement described procedures that were to govern various aspects of the arbitration, including the selection of the arbitrator, discovery, the filing of pleadings and motions and the award of remedies. The agreement further provided that the arbitrator was to issue a written award and statement of decision “specifying the applicable factual and legal findings and conclusion on which the award is based.” The agreement was silent on other issues relating to the arbitration, including judicial review of the arbitrator's award and allocation of the costs of the arbitration.

### 2. Ramos's complaint

On June 19, 2012, Ramos filed a class action complaint against Fry's for unpaid overtime (§§ 510, 1194 and 1198) and various other Labor Code violations, including failure to reimburse business expenses (§§ 2800, 2802), failure to pay wages in a timely manner (§ 204) and failure to provide accurate wage statements (§ 226). Ramos further alleged that each of these acts constituted an “unlawful business practice” within the meaning of Business and Professions Code section 17200 (section 17200) and requested an order for restitution and injunctive relief. Ramos sought to bring each of these claims “individually, as well as on behalf of each and all other persons similarly situated.”

In addition to his claims for damages and restitution, Ramos alleged a representative action under the PAGA seeking to collect penalties for each Labor Code violation “on behalf of all aggrieved employees in his capacity as private attorney general.”

### B. Fry's's Petition to Compel Arbitration

#### 1. Summary of Fry's's petition

On July 26, 2012, Fry's filed a petition to compel Ramos to arbitrate each of his claims on an individual basis. Fry's argued the language of the parties' agreement made

3

clear Ramos had agreed to arbitrate any claim arising from his employment. Fry's further asserted that because the agreement contained no language suggesting that the parties had contemplated class or representative arbitration, Ramos was required to arbitrate all of his claims on an individual basis.

In his opposition, Ramos argued there were numerous reasons the court should deny the petition. First, Ramos asserted Fry's had failed to make a "prima facie" showing that the parties had entered into a binding contract. Although Ramos admitted he had signed the arbitration agreement, he contended there was no evidence the parties had mutually consented to the agreement or that the agreement was supported by adequate consideration. In support, Ramos provided a declaration stating that was not given a chance to review the document and was not told the document was an arbitration agreement that would waive his right to a judicial forum.

Second, Ramos argued that even if Fry's had established a binding arbitration contract, his Labor Code claims fell outside the scope of the agreement. Ramos contended that "[f]or an arbitration clause to operate for individual statutory claims, there must be a clear and unmistakable waiver of a judicial forum." According to Ramos, his agreement with Fry's did not meet that standard because it did not specifically reference "statutory claims or identify any statutes."

Third, Ramos argued that, under California law, a plaintiff has a right to pursue statutory claims for unpaid wages in court regardless of any agreement to arbitrate. (See § 229.) Although Ramos acknowledged the FAA preempted this rule of state law, he argued the FAA was inapplicable because Fry's had presented no evidence showing that the agreement "involve[d] interstate commerce." Rather, according to Ramos, the evidence showed only that Fry's was headquartered in California, that he was a citizen of California and that he had never worked in a Fry's location outside of California.

Fourth, Ramos argued that even if Fry's had established the existence of an enforceable arbitration agreement governed by the FAA, the agreement was unenforceable because it was unconscionable. Ramos contended the agreement was procedurally unconscionable because it was a "nonnegotiable contract of adhesion" that

4

failed to "specify or attach the rules that govern the arbitration." He argued the agreement was "substantively unconscionable" because it did not "permit for judicial review of the arbitrator's decision."

Fifth, Ramos argued that even if the agreement was generally valid, it had no effect on his PAGA claim or his claim for injunctive relief under section 17200. Ramos contended the agreement contained no language indicating he had consented to arbitrate representative actions brought on behalf of the Attorney General. He further argued that, even if the agreement could be read to extend to representative PAGA claims, *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489 (*Brown*), made clear that "PAGA waivers" were unenforceable as a matter of public policy. Ramos raised a similar argument regarding his claim for injunctive relief under section 17200, asserting that *Cruz v. PacifiCare Health Systems*, Inc. (2003) 30 Cal.4th 303 (*Cruz*), had held that such claims are not arbitrable and that the FAA does not preempt this rule of state law.

Finally, Ramos argued that if the court intended to compel arbitration, "the action must be ordered to class arbitration." Ramos argued he was permitted to arbitrate his Labor Code claims on a classwide basis because the arbitration agreement did not specifically preclude class proceedings. He further argued that even if the agreement included an implied waiver of his right to class arbitration, such a waiver was unenforceable under *Gentry, supra*, 42 Cal.4th 443.

In its reply, Fry's argued that all of Ramos's arguments lacked merit. First, it asserted that the signed arbitration agreement, combined with Ramos's admission he signed the document, was sufficient to prove the existence of a valid contract. Second, it argued that the language in the agreement stating that the parties agreed to arbitrate all claims "arising from" or "related to" Fry's's employment extended to alleged violations of the Labor Code. Third, Fry's argued that the failure to include a specific provision permitting judicial review was insufficient to render the agreement unconscionable.

Fry's also asserted the FAA was applicable to the parties' employment agreement because the transaction related to "interstate commerce." In support, Fry's provided a

5

declaration demonstrating that it was a national electronics retailer and that its California stores sold merchandise acquired from vendors in numerous different states. Fry's further asserted that because the agreement was governed by the FAA, the trial court was required to apply recent decisions from the United States Supreme Court that had broadly interpreted the FAA's preemption provisions.

Fry's argued that under *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662 (*Stolt-Nielsen*), a party could not be compelled to engage in class or representative arbitration in the absence of an express provision demonstrating that it had agreed to do so. Fry's contended that because the parties' agreement was silent on class or representative arbitration proceedings, the parties were presumed to have waived the right to use consolidated arbitration proceedings and agreed only to "bilateral arbitration."

Fry's also argued that, in *AT&T Mobility LLC v. Concepcion* (2011) 131 S.Ct. 1740 (*Concepcion*), the Supreme Court made clear that the FAA preempts any state rule that would render class or representative action waivers in arbitration agreements unenforceable. Fry's argued that although *Concepcion* did not directly overrule the rule set forth in *Gentry*, its holding and its logic demonstrated that *Gentry's* rule precluding employment class action waivers was preempted by the FAA. Finally, Fry's argued that *Concepcion's* rationale also implicitly overruled the "*Cruz* rule" (see *Cruz, supra,* 30 Cal.4th 303) precluding arbitration of section 17200 claims seeking injunctive relief.

### 2. Trial court ruling

After a hearing, the trial court issued an order denying Fry's's petition to compel arbitration. The order initially considered and rejected Ramos's assertions that Fry's had failed to show the existence of a valid arbitration agreement; that the agreement did not cover alleged violations of the Labor Code; or that the agreement was not governed by the FAA. The court also agreed with Fry's's assertion that because the agreement did not reference class or representative proceedings, it effectively required Ramos to arbitrate his Labor Code and PAGA claims on an individual basis.

6

The court further concluded, however, that: (1) class and representative arbitration waivers are unenforceable under California law; and (2) the FAA does not preempt these rules, which are predicated on public policy. In support, the court cited to *Brown, supra,* 197 Cal.App.4th 489, which held that the FAA does not preempt California's rule prohibiting the enforcement of arbitration "PAGA waivers," and *Gentry, supra,* 42 Cal.4th 443. The court acknowledged that *Concepcion* had cast significant doubt on the continuing validity of *Gentry*, but believed it was compelled to apply *Gentry* until the California Supreme Court resolved the issue.

As a result of these rulings, and in light of the fact that Fry's's petition sought an order compelling arbitration on an individual basis only, the court denied the petition.

## DISCUSSION

### A. Standard of Review

"An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).) "In general, '[t]here is no uniform standard of review for evaluating an order denying a [petition] to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]' [Citation.]" (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1406.)

On appeal, Fry's concedes that, under California law, Ramos could not be compelled to arbitrate his Labor Code claims or his PAGA claim in his individual capacity, nor could he be compelled to arbitrate his claim for injunctive relief under section 17200. Fry's argues, however, that: (1) the parties' arbitration agreement is governed by the FAA; (2) under the FAA, the parties' arbitration agreement implicitly waived Ramos's ability to arbitrate his claims in a class or representative capacity and waived his right to a judicial forum on his injunctive relief claim; (3) to the extent such waivers are unenforceable as a matter of California public policy, the FAA preempts those state law rules.

7

Ramos, however, contends that we should affirm the trial court's ruling because: (1) Fry's failed to establish the arbitration agreement constitutes a binding contract or that it extends to statutory hours and wages claims; (2) the FAA does not govern the arbitration agreement; (3) even if the FAA applies, the agreement permits class and representative proceedings; (4) if the agreement impliedly waives the right to proceed with class or representative actions, those waivers are unenforceable; (5) the arbitration agreement has no effect on his claim for injunctive relief under section 17200.

### B. Fry's Demonstrated the Existence of a Binding Arbitration Agreement that Is Governed by the FAA

Before addressing the impact of the FAA on the parties' arbitration agreement, we assess Ramos's preliminary contentions that: (1) Fry's failed to establish the existence of a valid arbitration agreement; (2) the agreement does not cover violations of the Labor Code; and (3) Fry's did not demonstrate the arbitration agreement is governed by the FAA.

#### 1. Fry's established the existence of a binding arbitration agreement

Ramos initially contends that "Fry's has failed to establish a prima facie case that an agreement to arbitrate exists." Although Ramos admits he signed the arbitration agreement Fry's attached to its petition to compel arbitration, he contends no contract was formed because there was no mutual assent. In support, Ramos cites to statements in his declaration explaining that, on the day he was hired, a Fry's assistant manager handed him the form and told him he was required to sign it as a condition of his employment. According to Ramos, the assistant manager did not give him "an opportunity to read the form," did not tell him the document was an arbitration agreement and did not tell him he was waiving his right to a judicial forum. Fry's provided a counter declaration from a customer service supervisor stating that she presented the agreement to Ramos, instructed him to read the document and told him she would answer any questions he might have.

"Mutual assent to contract is based upon objective and outward manifestations of the parties; a party's 'subjective intent, or subjective consent, therefore is irrelevant.' [Citation.]" (*Stewart v. Preston Pipeline Inc.* (2005) 134 Cal.App.4th 1565, 1587.) The

8

general rule in California is that "a party who fails to read a contract but nonetheless objectively manifests his assent by signing it – absent fraud or knowledge by the other contracting party of the alleged mistake – may [not] later rescind the agreement on the basis that he did not agree to its terms." (*Id.* at p. 1589; *Marin Storage & Trucking, Inc. v. Benco Contracting and Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049 ["ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing"].) This general rule of contract law applies equally to arbitration agreements. (*Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674.) In this case, Ramos has not alleged that Fry's misled him about the contents of the arbitration agreement or that Fry's was otherwise aware he did not understand what he was signing. The mere fact that Ramos did not read or understand the agreement before signing it is insufficient to demonstrate lack of mutual consent.

Ramos also argues the arbitration agreement is unenforceable because he received no consideration for his promise to arbitrate claims arising from his employment. Ramos appears to assert the agreement amounted to a unilateral promise for which he received nothing in return. This argument, however, overlooks that the agreement is in fact bilateral in nature, requiring both parties to arbitrate any claims they may have against the other that arise from Fry's's employment. As explained in *Strotz v. Dean Witter Reynolds, Inc.* (1990) 223 Cal.App.3d 208, 216 [overruled on other grounds, *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394]: "[W]hatever the law may be regarding unilateral waiver of the right to select a judicial forum, it is not instructive in the context of a bilateral agreement to arbitrate. Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other. Both parties give up the same rights and thus neither gains an advantage over the other."

9

### 2. *Ramos's statutory wage and hour claims fall within the scope of the arbitration agreement*

Ramos next argues that his statutory wages and hour claims fall outside the scope of the arbitration agreement. He asserts that "[f]or an arbitration clause to operate for individual statutory claims," the agreement must "expressly" reference statutory claims and identify each statutory claim that is subject to arbitration. In support, he cites two cases involving the interpretation of collective bargaining agreements (CBA's) that contained provisions requiring the arbitration of any dispute "arising" out of the CBA. (See *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 433; *Hoover v. American Income Life Ins. Co*. (2012) 206 Cal.App.4th 1193, 1208 (*Hoover*).) In both cases, the courts applied special rules pertaining to the interpretation of arbitration provisions within "union-negotiated" CBAs (*Vasquez, supra,* 80 Cal.App.4th at p. 434): "'In the collective bargaining context, the parties "must be particularly clear' about their intent to arbitrate statutory [employment] claims.' [Citation.] A waiver in a collective bargaining agreement is sufficiently clear if it . . . contain[s] a clear and unmistakable provision under which the employees agree to submit to arbitration all [state and federal statutory] causes of action arising out of their employment.' [Citation.]" (*Ibid.*; see also *Hoover, supra*, 206 Cal.App.4th at p. 1208.) Both courts concluded that a general provision requiring the arbitration of disputes "arising" out of the CBA did not satisfy those requirements. (*Vasquez, supra,* 80 Cal.App.4th at pp. 435-436; *Hoover, supra*, 206 Cal.App.4th at p. 1208.)

*Vasquez* and *Hoover* have no relevance here. First, this case does not involve the interpretation of a collective bargaining agreement. Thus, the special rules of construction at issue in *Vasquez* and *Hoover* do not apply. Second, unlike in *Vasquez* or *Hoover*, the language in Ramos's agreement does not merely require the arbitration of disputes "arising" out of the parties' contract. Rather, the agreement states that the parties would arbitrate "any and all disputes . . . arising from or in any way related to [Ramos's] employment by Fry's, including but not limited to claims for damages and violation of state or federal laws . . . ." Each of Ramos's claims, all of which are

predicated on alleged violations of the Labor Code, clearly arises from the conditions of his employment. Accordingly, his claims fall within the scope of the agreement.

### 3. *Fry's provided evidence demonstrating the arbitration agreement is governed by the FAA*

Ramos argues that even if Fry's established the existence of an enforceable agreement to arbitrate statutory wage and hour claims, it failed to show the agreement is governed by the FAA. Section 2 of the FAA (9 U.S.C. § 2) states that the federal statute applies to any "written provision in . . . a contract evidencing a transaction involving commerce." The United States Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the term 'affecting commerce' – words of art that ordinarily signals the broadest permissible exercise of Congress' commerce clause power. [Citation.]" (*Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56 (*Citizens Bank*); *Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1097 (*Shepard*).) Under this broad interpretation, "application of the FAA [is not] defeated because the individual [transaction], taken alone, did not have a 'substantial effect on interstate commerce.' [Citation.]. Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.' [Citations.] Only that general practice need bear on interstate commerce in a substantial way. [Citations.]" (*Citizen's Bank, supra*, 539 U.S. at pp. 56-57.)

As the party asserting the applicability of the FAA, Fry's had the burden to produce evidence showing the contract involved interstate commerce. (*Shepard, supra*, 148 Cal.App.4th at p. 1101; *Hoover, supra*, 206 Cal.App.4th at p. 1207.) In the trial court, Fry's submitted a declaration stating the following facts: Fry's is an "electronics retailer" that is headquartered in California and operates retail stores located in nine states; the inventory sold in Fry's's California stores "is purchased from vendors in 44 states and the District of Columbia"; Fry's maintains an "e-commerce" website that ships goods to all 50 states from a distribution center located in Tennessee. The trial court

11

concluded these facts were sufficient to demonstrate that Fry's was a "nationwide retailer and affects interstate commerce, even if Ramos individual position did not require interaction outside of California." In support, the court cited *Peleg v. Neiman Marcus Group, Inc.* (2012) 204 Cal.App.4th 1425, 1447, which held that the defendant's status as a national retailer provided an adequate basis to demonstrate the FAA applied to its employment arbitration agreements.

Ramos does not explain why Fry's's evidence is insufficient to demonstrate the applicability of the FAA nor does he attempt to distinguish *Peleg*. Instead, he asserts the FAA is inapplicable because "he is not aware of any facts suggesting that the employee-employer relationship between Ramos and Fry's had a specific effect or bearing on interstate commerce in a substantial way.'" As explained above, however, the Supreme Court has clarified that "application of the FAA [is not defeated] because the individual . . . transaction[], taken alone, did not have a 'substantial effect on interstate commerce.'" (*Citizens Bank, supra*, 539 U.S. at pp. 56-57.) Rather, the question is whether the Fry's's employment relationships with its employees, considered in the aggregate, affect interstate commerce.

Fry's's evidence is sufficient to support the trial court's finding of FAA coverage for two reasons. First, the evidence shows Fry's employed personnel and sold merchandise at least nine states. (See generally *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 109 [FAA applied to employment agreement entered into with "national retailer of consumer electronics"].) Second, the evidence shows the employees in Fry's's California retail stores (which includes Ramos) sell merchandise that Fry's acquires from vendors located in 44 states. (*See Shepard, supra,* 148 Cal.App.4th at pp. 1100-1101 [evidence that "construction of plaintiff's house involved the receipt and use of building materials that were manufactured and/or produced outside California" sufficient to demonstrate FAA governed estate purchase arbitration agreement].)

The only authority Ramos cites in support of his assertion that Fry's failed to demonstrate FAA coverage is *Hoover, supra,* 206 Cal.App.4th 1193. In *Hoover*, however, the court held that the defendant had "waived the right to seek arbitration by

12

actively litigating th[e] action for more than a year and causing prejudice to [plaintiff.]" (*Id.* at p. 1203.)  The court further explained that even if defendant "had not waived its right to assert arbitration, [the court] would [have] decide[d] [defendant] could not compel arbitration" (*id.* at p. 1206) of plaintiff's wage and hour claims because California law provides a judicial forum for such claims "'without regard to the existence of any private agreement to arbitrate . . .'" (*Id.* at p. 1207 [citing Labor Code, § 229].)  The court noted that although this state law is inapplicable "when there is federal preemption under the FAA," the defendant had failed to provide evidence demonstrating its contract with plaintiff had any effect on interstate commerce.  (*Id.* at pp. 1207-1208.)  According to the court, the only "facts" defendant had established were that plaintiff "was a California resident who sold life insurance policies" and that the defendant was "based in Texas." (*Ibid.*)  The court concluded that, standing alone, such facts were insufficient to "demonstrate FAA coverage."  (*Ibid.*)

To the extent the *Hoover's* discussion of FAA coverage amounted to anything more than dicta, the case is distinguishable.  Unlike Fry's, the defendant in *Hoover* did not present any evidence that it employed people throughout the country, that it sold its products to consumers located throughout the country or that its California employees sold products acquired from vendors in numerous other states.

### C. *Ramos Is Required to Arbitrate his Labor Code Claims in his Individual Capacity, but Is Entitled to Pursue a Representative PAGA Claim*

Having concluded that Fry's demonstrated the existence of an enforceable arbitration agreement governed by the FAA, we next consider whether the agreement required Ramos to arbitrate his Labor Code and PAGA claims on an individual (rather than class or representative) basis.

13

## 1. Summary of case law governing employment arbitration agreements and class arbitration waivers

### a. Summary of California law prior to Stolt–Nielsen and Concepcion

More than 30 years ago, the California Supreme Court held in *Keating v. Superior Court* (1982) 31 Cal.3d 584, that trial courts have the authority to order classwide arbitration in appropriate cases. "The arbitration agreement in *Keating* had no specific provision permitting or precluding classwide arbitration, but the high court held that a trial court has the discretionary authority to order classwide arbitrations where the interests of justice would be served. [Citations.]" (*Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 498 (*Truly Nolen*).) Following *Keating*, class arbitration became a "well accepted" method for resolving disputes in California. (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 152 (*Discover Bank*).)

Almost two decades after *Keating* was decided, the California Supreme Court addressed the enforceability of an employment agreement requiring the arbitration of wrongful termination claims arising under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 *et seq.*). (*Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83 (*Armendariz*).) *Armendariz* concluded that although FEHA statutory claims are unwaivable, "such claims are in fact arbitrable *if* the arbitration permits an employee to vindicate his or her statutory rights." (*Id*. at p. 90.) The Court explained that, "[i]n order for such vindication to occur, the arbitration must meet certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." (*Id*. at p. 91.)

*Armendariz* further ruled that even if an arbitration agreement satisfies each of these minimum requirements (or does not pertain to unwaivable statutory rights), the agreement may be invalidated if it is found to be unconscionable. As explained in *Armendariz*, "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion. . . . If the contract is adhesive, the court must then determine whether 'other factors are present which, under established legal rules – legislative or

14

judicial – operate to render it [unenforceable].' [Citation.] [¶] . . . [¶] '[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on '"oppression"' or '"surprise"' due to unequal bargaining power, the latter on '"overly harsh"' or '"one-sided"' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . ." (*Id* at pp. 113-114.)

Thus, *Armendariz* concluded that an agreement requiring the arbitration of unwaivable statutory rights may be unenforceable under two theories. First, the agreement may be found to lack an essential element necessary to effectuate the unwaivable statutory rights at issue, thereby rendering the agreement unenforceable as "contrary to public policy." (*Armendariz, supra,* 24 Cal.4th at p. 99.) Second, the agreement may be unenforceable under principles of unconscionability. (*Ibid*.) The Court also concluded that the FAA permitted states to invalidate arbitration agreements based on these general principles of contract law. In support, the Court cited the FAA's savings provision, which states that arbitration agreements are valid, irrevocable, and enforceable "'save upon such grounds as exist at law or in equity for the revocation of any contract.' (9 U.S.C. § 2)." (*Id*. at p. 98.)

In *Discover Bank, supra,* 36 Cal.4th 148, the Court "considered an issue unaddressed in *Keating* – whether an express 'class action waiver may be unenforceable as contrary to public policy or unconscionable.' [Citation.]" (*Truly Nolen, supra*, 208 Cal.App.4th at p. 499.) The plaintiff filed a class action complaint alleging a credit card company had improperly imposed late fee payments. The defendant sought an order compelling plaintiff to arbitrate his claim on an individual basis, citing a provision in the parties' credit card user agreement that expressly waived the right to proceed by class arbitration. Plaintiff opposed the petition, arguing that "class action or arbitration waivers in consumer contracts . . . should be invalidated as unconscionable under California law." (*Discover Bank, supra,* 36 Cal.4th at p. 160.)

The Court agreed, holding that some forms of consumer class action waivers are unconscionable: "[W]hen the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.' [Citation.] Under these circumstances, such waivers are unconscionable under California law and should not be enforced." (*Discover Bank, supra,* 36 Cal.4th at pp. 162-163.)

As in *Armendariz*, the Court further concluded that this rule of state law was not preempted by the FAA: "'Under section 2 of the FAA, a state court may refuse to enforce an arbitration agreement based on "generally applicable contract defenses, such as fraud, duress, or unconscionability."' [Citation.] . . . In the present case, the principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory is a principle of California law that does not specifically apply to arbitration agreements, but to contracts generally. In other words, it applies equally to class action litigation waivers in contracts without arbitration agreements as it does to class arbitration waivers in contracts with such agreements." (*Discover Bank, supra,* 36 Cal.4th at p. 65.)

Two years later, in *Gentry, supra*, 42 Cal.4th 443, the Court "consider[ed] whether class arbitration waivers in employment arbitration agreements may be enforced to preclude class arbitrations by employees whose statutory rights to overtime pay pursuant to Labor Code sections 500 et seq. and 1194." (*Id*. at p. 450.) The agreement at issue contained an express waiver stating that the arbitrator "shall not consolidate claims of different [employees] into one proceeding . . . [or] have the power to hear arbitration as a class action." (*Id*. at p. 451.)

In its analysis, the Court explained that, unlike in *Discover Bank*, the plaintiff's claim was predicated on his unwaivable statutory right to overtime pay. As a result, even if the arbitration agreement was not unconscionable, the class arbitration waiver

16

provision was unenforceable on public policy grounds if it would "'undermine the vindication of the employees' . . . statutory rights.'" (*Iskanian, supra*, 59 Cal.4th at p. 363.)

The Court concluded that a class arbitration waiver would impermissibly interfere with employees' ability to vindicate overtime rights "under some circumstances." (*Gentry, supra*, 42 Cal.4th.at p. 457.) The Court explained that when a plaintiff seeks a class action alleging unpaid overtime "notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial court must consider [four] factors" (*id.* at p. 463): (1) the modest size of the potential individual recovery; (2) the potential for retaliation against members of the class; (3) the fact that absent class members may be ill informed about their rights; and (4) other real world obstacles to the vindication of class members' statutory rights. (*Ibid.*) The Court held that if the "trial court determines, based on [these] factors . . ., that class action arbitration would be a significantly more effective way of vindicating the rights of affected employees than individual arbitration," the court must invalidate the class arbitration waiver. (*Id.* at p. 450.)

The Court also concluded that a rule "invalidating [some forms of employment] class arbitration waivers" was not preempted by the FAA because it did not "discriminate[] against arbitration." (*Gentry, supra*, 42 Cal.4th at p. 465.) Rather, according to the Court, "[t]he principle that in the case of certain unwaivable statutory rights, class action waivers are forbidden when class actions would be the most effective practical means of vindicating those rights is an arbitration-neutral rule: it applies to class waivers in arbitration and nonarbitration provisions alike." (*Ibid.*)

### b. *Stolt–Nielsen and Concepcion*

In 2010, the United States Supreme Court decided *Stolt–Nielsen, supra*, 559 U.S. 662, "which concerned the issue whether a court/arbitrator has the authority under the FAA to order classwide arbitration in a situation where there is no agreement to engage in class arbitration. [Citation.]" (*Truly Nolen, supra*, 208 Cal.App.4th at p. 502.) The parties agreed that although the arbitration agreement did not contain an explicit class action waiver provision, they had not agreed to class arbitration. The arbitration panel,

17

however, concluded the agreement implicitly permitted class arbitration because there was no provision explicitly precluding consolidated proceedings.

The Supreme Court reversed, concluding that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that both parties *agreed* to do so." (*Stolt–Nielsen, supra*, 559 U.S. at p. 684.) The Court explained that "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." (*Id.* at p. 685.)

One year later, the United States Supreme Court decided *Concepcion, supra,* 131 S.Ct. 1740, which abrogated *Discover Bank*. The plaintiff in *Concepcion* brought a class action challenging a cell phone carrier's imposition of sales tax on a free phone. The defendant moved to compel individual arbitration of the claim pursuant to a clause in the plaintiff's consumer contract that included an express waiver of the right to class arbitration. Relying on *Discover Bank*, the lower courts refused to enforce the class action waiver clause under California law. The United States Supreme Court granted certiorari to consider "whether [the FAA] preempts California's [*Discovery Bank*] rule classifying most collective-arbitration waivers in consumer contracts as unconscionable." (*Id.* at p. 1746.)

As summarized by the California Supreme Court: "[t]he high court in *Concepcion* invalidated *Discover Bank* and held that '[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.' [Citation.] According to *Concepcion*, classwide arbitration 'sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.' [Citation.] . . . . The court concluded that '[b]ecause it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,"

18

[citation], California's *Discover Bank* rule is preempted by the FAA.' [Citation.]"
(*Iskanian, supra*, 59 Cal.4th at p. 362.)

   *c. Iskanian*

  In *Iskanian, supra*, 59 Cal.4th 348, the California Supreme Court addressed
*Concepcion's* effect on the enforceability of class and representative arbitration waivers
in employment agreements. Plaintiff filed a class action complaint for unpaid overtime
and various other Labor Code violations. The complaint also alleged a representative
action under the PAGA seeking penalties for each violation of the Labor Code on behalf
of all aggrieved employees. The defendant moved to compel individual arbitration based
on an employment agreement that precluded either party from pursuing any "class action
or representative action claims . . . in arbitration or otherwise." (*Id*. at pp. 360-361.)
Citing *Concepcion*, the trial court granted employer's petition, ordering the case into
individual arbitration and dismissing the class and representative claims. The appellate
court affirmed.

  The California Supreme Court initially summarized *Concepcion*, explaining the
decision had held that: (1) the FAA preempts state rules that are incompatible with the
fundamental attributes of arbitration; and (2) requiring classwide arbitration interfered
with numerous attributes of arbitration, including its expediency and informality.[2] The
Court concluded that, under the principles of *Concepcion*, *Gentry's* rule against some

---

**2**   In *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, the Court clarified
that *Concepcion* does not prevent states from applying general rules of contract law that
have a "disproportionate impact" on arbitration: "[A] facially neutral state law rule is not
preempted simply because its evenhanded application 'would have a disproportionate
impact on arbitration agreements.' [Citation.] . . . . Under *Concepcion*, a state law rule is
preempted when its impact is such that it interferes with fundamental attributes of
arbitration." (*Id*. at p. 1144.) The court reaffirmed these principles in *Iskanian*. The
Ninth Circuit has reached a different conclusion, holding that, under *Concepcion*,
"generally applicable state-law rules are preempted if in practice they have a
'disproportionate impact' on arbitration *or* 'interfere[] with fundamental attributes of
arbitration and thus create[] a scheme inconsistent with the FAA.' [Citation.]"
(*Mortensen v. Bresnan Communications, LLC* (9th Cir. 2013) 722 F.3d 1151, 1159
[emphasis added].)

forms of employment class arbitration waivers was preempted under the FAA. (*Id*. at p. 362.)

The Court next considered whether the plaintiff was required to arbitrate his PAGA claim on an individual basis. The Court began by summarizing the PAGA provisions: "'Under the legislation, an "aggrieved employee" may bring a civil action personally and on behalf of other current or former employees to recover civil penalties for Labor Code violations. [Citation.] Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the "aggrieved employees." [Citations.]. [¶] Before bringing a civil action for statutory penalties, an employee must . . . give written notice of the alleged Labor Code violation to both the employer and the Labor and Workforce Development Agency. . . . If the agency elects not to investigate, the employee may commence a civil action. [Citation.]' [Citation.]" (*Iskanian, supra*, 59 Cal.4th at p. 380.) According to the Court, these provisions demonstrated that a PAGA representative action is "a type of *qui tam* action" (*id*. at p. 382) that permits "aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts." (*Id*. at p. 379.)

The Court then addressed whether California law prohibited the waiver of representative PAGA claims and, if so, whether such a rule was enforceable under the FAA. The Court first concluded that such claims were unwaivable: "an employment agreement [that] compels the waiver of representative claims under the PAGA . . . is contrary to public policy and unenforceable as a matter of state law." (*Iskanian, supra*, 59 Cal.4th at p. 384.) In reaching its conclusion, the Court rejected defendant's assertion that the particular waiver at issue was not against public policy because the plaintiff retained his right to arbitrate his PAGA claim on an individual basis: "[W]hether or not an individual claim is permissible under the PAGA, a prohibition of representative claims frustrates the PAGA's objectives . . . [because] a single-claimant arbitration . . . for individual penalties will not result in the penalties contemplated under the PAGA to

20

punish and deter employer practices that violate the rights of numerous employees under the Labor Code. That plaintiff and other employees might be able to bring individual claims for Labor Code violations in separate arbitrations does not serve the purpose of the PAGA, even if an individual claim has collateral estoppel effects. [Citation.] Other employees would still have to assert their claims in individual proceedings.' [Citation.]" (*Ibid*.)

The Court then explained that the FAA did not preempt this rule of California law: "*Concepcion* made clear [that] a state law rule may be preempted when it 'stands as an obstacle to the accomplishment of the FAA's objectives.' [Citation.] . . . [T]he rule against PAGA waivers does not frustrate the FAA's objectives because . . . the FAA aims to ensure an efficient forum for the resolution of private disputes, whereas a PAGA action is a dispute between an employer and the state Agency." (*Iskanian, supra*, 59 Cal.4th at p. 384.) The Court concluded: "Nothing in the text or legislative history of the FAA nor in the Supreme Court's construction of the statute suggests that the FAA was intended to limit the ability of states to enhance their public enforcement capabilities by enlisting willing employees in qui tam actions." (*Id*. at p. 387.)

Finally, the court addressed what remedy was appropriate in light of its holding that the arbitration agreement's class arbitration waiver was enforceable, but its PAGA waiver was not: "Although the arbitration agreement can be read as requiring arbitration of individual claims but not of representative PAGA claims, neither party contemplated such a bifurcation. [Plaintiff] has sought to litigate all claims in court, while [defendant] has sought to arbitrate the individual claims while barring the PAGA representative claim altogether. In light of the principles above, neither party can get all that it wants. [Plaintiff] must proceed with bilateral arbitration on his individual damages claims, and [the defendant] must answer the representative PAGA claims in some forum. The arbitration agreement gives us no basis to assume that the parties would prefer to resolve a representative PAGA claim through arbitration. [¶] This raises a number of questions: (1) Will the parties agree on a single forum for resolving the PAGA claim and the other claims? (2) If not, is it appropriate to bifurcate the claims, with individual claims going to

21

arbitration and the representative PAGA claim to litigation? (3) If such bifurcation occurs, should the arbitration be stayed pursuant to Code of Civil Procedure section 1281.2? [Citation.] The parties have not addressed these questions and may do so on remand." (*Iskanian, supra*, 59 Cal.4th at pp. 391-392.)

### 2. *Ramos has failed to establish the arbitration agreement is unconscionable*

Ramos initially contends that, under *Armendariz*, the entire arbitration agreement is unenforceable based on principles of unconscionability. Ramos asserts the agreement is procedurally unconscionable because "it is an adhesion contract based on a standardized non-negotiable form, drafted and imposed by a party of superior bargaining position, i.e., Fry's." Ramos argues the agreement is substantively unconscionable because "the Agreement does not permit judicial review of the arbitrator's decision."

Regardless of whether the agreement exhibits some level of procedural unconscionability, Ramos has failed to demonstrate that the agreement's terms are substantively unconscionable. Contrary to Ramos's suggestion, the agreement does not prohibit judicial review of the arbitrator's award. Rather, the agreement is silent on the issue of judicial review. The agreement does, however, provide that the arbitration shall be conducted "pursuant to the provisions of the [FAA] and to state law to the extent state law would otherwise be applicable . . ." Sections 10 and 11 of the FAA (9 U.S.C. §§ 10, 11) and sections 1286.2 and 1286.6 of the California Arbitration Act (Code Civ. Proc., §§ 1286.2, 1286.6) provide for limited judicial review of arbitration awards governed by their respective provisions. Nothing in the arbitration agreement denies either party the benefit of that review. Consequently, the agreement is not unconscionable merely because it does not explicitly provide for judicial review. (See *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1075, fn. 1 ["the fact that an arbitration agreement does not explicitly provide for judicial review is no basis for invalidating it. [Citation.]"].)

22

### 3. Ramos is required to arbitrate his Labor Code claims on an individual basis

The trial court ruled that, under *Gentry*, Ramos could not be compelled to arbitrate his Labor Code claims on an individual basis. Fry's argues that, in light of *Iskanian*, it is now clear that the FAA preempts the "*Gentry* rule" and that Ramos must therefore be ordered to arbitrate his claims individually as required under the terms of the arbitration agreement. Ramos disagrees, arguing that: (1) the arbitration agreement does not preclude class arbitration; and (2) to the extent that it does, he satisfied all of the factors set forth in *Gentry*, thereby rendering any class action waiver unenforceable.

### a. The arbitration agreement does not permit class arbitration[3]

Ramos contends that, unlike the arbitration agreements at issue in *Concepcion, Gentry* and *Iskanian*, the agreement at issue here does "not explicitly reject class arbitration." According to Ramos, the absence of any such language demonstrates "an implied agreement to class arbitration exists." We disagree, concluding this argument is foreclosed by *Stolt-Nielsen*.

The agreement between Ramos and Fry's does not reference class arbitration. Rather, the agreement states only that "[Ramos and Fry's] hereby agree that any and all disputes between [Ramos and Fry's] (including disputes between [Ramos] and other [employees] or agents of [Fry's] and entities legally related to [Fry's]) arising from or in any way related to [Ramos's] employment by [Fry's] . . . shall be determined and decided by final and binding arbitration."

---

**3**    Neither party has argued that the trial court lacked authority to determine whether their agreement permits class arbitration. (See *Sandquist v. Lebo Automotive, Inc*. (2014) 228 Cal.App.4th 65, 78 ["the question whether the parties agreed to class arbitration in cases where the arbitration agreement is silent is determined by the arbitrator"].) Instead, both parties invited the trial court (and now invite this court) to decide the issue of class arbitrability. Under such circumstances, the court may properly determine whether the parties agreed to class arbitration. (See *Truly Nolen, supra,* 208 Cal.App.4th at p. 515 [court may properly decide question of class arbitrability where both parties requested that it resolve the issue].)

23

In *Nelsen v. Legacy Partners Residential, Inc*. (2012) 207 Cal.App.4th 1115, (*Nelsen*), the court considered whether a similarly-worded employment arbitration agreement operated as a waiver of class arbitration. The plaintiff's agreement stated: "'I agree that any claim, dispute, or controversy . . . between myself and [the employer] (or its . . . agents . . .) arising from . . . my . . . employment by . . . [employer], . . . shall be submitted to and determined exclusively by binding arbitration." (*Id*. at p. 1120.) The court concluded that, under *Stolt-Nielsen*, this language could not be reasonably interpreted as permitting class arbitration. According to *Nelsen*, *Stolt-Nelsen* clarified that "'a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.' [Citation.] [Although *Stolt-Nelsen*] did not specify what is affirmatively required in order to show there is a 'contractual basis,' . . . it did hold that the agreement's 'silence on the question of class arbitration' cannot be taken as dispositive evidence of an intent to allow class arbitration. [Citation.]" (*Id.* at p. 1128.)

Applying those principles to the agreement at issue, *Nelsen* found there was no language in the contract suggesting the parties had agreed to class arbitration. The court explained that "the agreement [only contemplates arbitration] of disputes between '[the plaintiff and the employer]'. . . A class action by its very nature is not a dispute or controversy 'between [plaintiff and employer].' In this case (assuming a class was certified) it would be a dispute between [employer] and numerous different individuals, one of whom is [plaintiff]. Although [employer] agreed with [plaintiff] to arbitrate all kinds of disputes that might arise between them, this choice of contractual language, by its ordinary meaning, unambiguously negates any intention by [employer] to arbitrate claims or disputes to which [plaintiff] was not a party." (*Nelsen, supra*, 207 Cal.App.4th at p. 1130.)

In *Kinecta Alternative Financial Solutions, Inc. v. Superior Court* (2012) 205 Cal.App.4th 506 (*Kinecta*), the court considered essentially identical language in a wage and hour class action brought by a credit union employee against her former employer. The employee's arbitration agreement covered "'any claim, dispute, and/or controversy

that either I may have against the [employer] (or its . . . employees [or] agents . . .) or the [employer] may have against me, arising from, related to, or having any relationship or connection whatsoever with my . . . employment by, or other association with the [employer.]'" (*Id.* at p. 511, fn. 1.) As in *Nelsen*, the court applied *Stolt-Nelsen* and concluded there was no basis for finding the agreement authorized class arbitration: "The arbitration provision identifies only two parties to the agreement, 'I, [plaintiff]' and '[employer].' It makes no reference to employee groups or to other employees of [employer], and instead refers exclusively to 'I,' 'me,' and 'my' (designating [plaintiff].)" (*Id.* at p. 517.)

The language in Ramos's arbitration agreement cannot be meaningfully distinguished from the language at issue in *Nelsen* or *Kinecta.* As in those cases, the agreement states that the parties agreed that "any and all [employment-related] disputes between [Ramos] and [Fry's]" shall be determined by arbitration. For the reasons set forth in *Nelsen* and *Kinecta,* we conclude this "contractual language . . . contemplates a two-party arbitration. No language evinces an intent to allow class arbitration." (*Nelsen, supra*, 207 Cal.App.4th at p. 1131.)

### b. *Iskanian has clarified that the FAA preempts the Gentry rule*

Ramos argues that even if the arbitration agreement impliedly waives class arbitration, that waiver is unenforceable because he has satisfied all of the factors set forth in *Gentry.* *Iskanian*, however, concluded that the reasoning in *Concepcion* made clear that "the FAA preempts the *Gentry* rule." (*Iskansian, supra*, 59 Cal.4th at p. 366.) Therefore, under *Iskanian* and *Concepcion*, Ramos must "proceed with bilateral arbitration on his individual damages claims." (*Id.* at p. 391.)[4]

---

**4** The California Supreme Court issued *Iskanian* after Ramos submitted his respondent's brief, but before Fry's submitted its reply brief. Prior to oral argument, we issued a letter to counsel requesting they be prepared to address the effect of *Iskanian*.

#### *4. Ramos is entitled to pursue a representative PAGA claim*

We next consider whether Ramos may be compelled to arbitrate his PAGA claim on an individual basis. As summarized above, *Iskanian* held that arbitration provisions requiring the waiver of "representative actions brought under the Private Attorneys General Act" (*Iskanian, supra*, 59 Cal.4th at p. 378) are impermissible under state law, and further held that the FAA does not preempt this rule.

Fry's does not dispute that *Iskanian* precludes the enforcement of an employment agreement provision that expressly waives the arbitration of representative claims under the PAGA. It contends, however, that *Iskanian* is inapplicable here because the arbitration agreement does not contain an "explicit . . . representative waiver. . . Rather, . . . the agreement is silent with respect to PAGA claims." According to Fry's, Ramos is therefore "not precluded from pursuing his PAGA claim on an individual basis." Thus, Fry's essentially argues that, under *Iskanian*, a plaintiff may be compelled to arbitrate his or her PAGA claim on an individual basis where the agreement is silent on the issue of representative arbitration proceedings.

Even if we were to accept Fry's's assertion that the agreement included an implied representative action waiver requiring Ramos to arbitrate his PAGA claim on an individual basis, such a provision would be unenforceable under *Iskanian*.[5] The defendant employer in *Iskanian* raised a similar argument, asserting that the agreement at issue was not contrary to public policy because it only prohibited "representative claims, not individual PAGA claims for Labor Code violations that an employee suffered." (*Iskanian, supra*, 59 Cal.4th at p. 383.) The California Supreme Court disagreed, stating: "[W]hether or not an individual claim is permissible under the PAGA, a prohibition of representative claims frustrates the PAGA's objectives" because a "single-claimant arbitration . . . will not result in the penalties contemplated under the

---

**5**    Fry's appears to argue that, under the reasoning of *Stolt-Nielsen, supra,* 559 U.S. 662, an arbitration agreement that does not reference representative claims must be interpreted as requiring individual arbitration of any claim that could be brought in a representative capacity. We need not decide that issue, concluding that, under *Iskanian*, a provision requiring a plaintiff to arbitrate his PAGA claim on an individual basis is unenforceable.

26

PAGA to punish and deter employer practices that violate the . . . Labor Code." (*Id.* at pp. 383-384.)  The Court's analysis makes clear that an arbitration provision that precludes representative PAGA claims, but permits individual PAGA claims, is still contrary to public policy and therefore unenforceable.[6]

### D. *Ramos's Claim for Injunctive Relief Under Section 17200 Is not Arbitrable*

Finally, we consider Ramos's assertion that, under *Cruz, supra,* 30 Cal.4th 303, his claim of injunctive relief under section 17200 is not arbitrable.  In *Cruz*, the California Supreme Court held that section 17200 injunctive relief actions that would benefit the public are not arbitrable.  (*Id*. at pp. 315-316.)  *Cruz* extended the Court's prior holding in *Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066 (*Broughton*), which held that a claim seeking public injunctive relief under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 *et seq*.) was not arbitrable.  *Broughton* explained that "the evident purpose of the injunctive relief provision of the CLRA is not to resolve a private dispute but to remedy a public wrong."  (*Broughton, supra,* 21 Cal.4th at p. 1080.)  According to the Court, a plaintiff seeking an injunction under the CLRA "function[s] as a private attorney general, enjoining future deceptive practices on behalf of the general public. . . . [U]nder such circumstances arbitration is not a suitable forum."  (*Id*. at pp. 1079-1080.)  The Court further explained that such a rule was not preempted by the FAA because the federal statute was not intended to govern "'public injunction' arbitrations."  (*Id*. at p. 1082.)  In *Cruz*, the Court explained that claims for public injunctive relief under the UCL are "indistinguishable from the CLRA [injunctive relief] claim that was at issue in *Broughton*" and are therefore inarbitrable for the same reasons.  (*Cruz, supra,* 30 Cal.4th at p. 315.)

Fry's argues that the "*Broughton*-C*ruz* rule does not survive *Concepcion* because the rule prohibits outright the arbitration of a particular type of claim – claims for broad

---

[6]    Fry's requests that, in the event we conclude *Iskansian* permits Ramos to pursue his representative PAGA claim, we stay this appeal until the United States Supreme Court decides whether to accept a petition for review that was filed in *Iskanian* on September 22, 2014.  We decline this request.

public injunctive relief.'" At least one California court has agreed, concluding: "*Concepcion* adopts a sweeping rule of FAA preemption. Under *Concepcion*, the FAA preempts any rule or policy rooted in state law that subjects agreements to arbitrate particular kinds of claims to more stringent standards of enforceability than contracts generally. Absolute prohibitions on the arbitration of particular kinds of claims such as that reflected in *Cruz* are the clearest example of such policies . . . since [*Cruz*] prohibits outright the arbitration of claims for public injunctive relief, it is in conflict with the FAA." (*Nelsen, supra*, 207 Cal.App.4th at p. 1136; see also *Kilgore v. KeyBank, N.A.* (9th Cir. 2012) 673 F.3d 947 [under *Concepcion*, the *Cruz* rule is preempted by FAA].)

*Nelsen,* however, was decided prior to *Iskanian*, in which our Supreme Court adopted a narrower interpretation of *Concepcion*. (*Iskanian, supra*, 59 Cal.4th at p. 364 [*Concepcion* held only that "states cannot require a procedure that interferes with fundamental attributes of arbitration"].) As discussed above, *Iskanian* also held that PAGA claims are not governed by the FAA because they are, in effect, disputes between the employer and the state. The *Broughton-Cruz* rule is predicated on analogous reasoning. (*Broughton, supra,* 21 Cal.4th at pp. 1079-1080.)

In any event, the California Supreme Court has not yet had an opportunity to consider *Concepcion's* effect on the *Broughton-Cruz* rule. While the reasoning of *Concepcion* could be read to implicitly disapprove of such a rule, the United States Supreme Court did not directly address whether the FAA preempts state rules prohibiting the arbitration of statutorily-based public injunctive relief claims. "Under the circumstances, we decline to disregard the California Supreme Court's decision without specific guidance from our high court." (*Truly Nolen, supra*, 208 Cal.App.4th at p. 507.)[7]

---

[7] Fry's has never argued Ramos's claim for injunctive relief under section 17200 does not fall within the *Cruz* rule. At least one court has concluded that, to establish that an injunctive relief claim falls within *Cruz*, the plaintiff must make a factual showing the relief sought would "more than incidentally benefit the public." (*Nelsen, supra,* 207 Cal.App.4th at p. 1136.) Because Fry's has not argued that Ramos failed to show an injunction in this case would have more than an incidental benefit to the public, we need not address that issue.

### E. Remedy

In sum, Ramos must proceed with bilateral arbitration on his individual damages claims. He is not, however, compelled to arbitrate his PAGA claim on an individual basis, nor is he required to arbitrate his claim for injunctive relief under section 17200. As in *Iskanian, supra*, 59 Cal.4th 348, the arbitration agreement provides no basis to determine how the parties would prefer to proceed under these circumstances. On remand, the parties may address: (1) whether they will voluntarily agree on a single forum for resolving all of their claims; (2) if not, whether it is appropriate to bifurcate the claims, with individual claims going to arbitration and the representative PAGA claim and section 17200 claim for injunctive relief going to litigation; (3) if such bifurcation occurs, whether the trial court should stay the arbitration or litigation. (See *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1098-1099 [under Code of Civil Procedure section 1281.2, "trial courts have the power to sever arbitrable claims from inarbitrable ones and to stay either the arbitration or the judicial proceedings pending the outcome of the other"].)

## DISPOSITION

The trial court's order denying Fry's's motion to compel arbitration is reversed. The matter is remanded for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

ZELON, J.

We concur:

PERLUSS, P. J.                    SEGAL, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.